IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| DEREK W. CORNELIUS and SI03, INC., a Delaware Corporation, | ) ) ) | Case No. CV-10-27-S-BLW |
| Plaintiffs, | ) ) ) | **MEMORANDUM DECISION AND ORDER** |
| v. | ) ) | |
| RYAN DELUCA d/b/a BODYBUILDING. COM; BRYNA MATTHEWS DELUCA d/b/a BODYBUILDING.COM; BODYBUILDING.COM, LLC; MOLECULAR NUTRITION, LLC; M.A.N. SPORTS, INC.; DESIGNER SUPPLEMENTS, INC.; GASPARI NUTRITION, INC.; THERMOLIFE INTERNATIONAL, LLC; SCIENTIFICALLY ADVANCED NUTRITION; UNIQUE NUTRITION, INC.; ENGINEERED SPORTS TECHNOLOGY, LLC; PALO ALTO LABS; SNS NUTRITION; BODYWELL NUTRITION, LLC; ISS RESEARCH; ERGOPHARM, INC.; BETANCOURT NUTRITION, INC.; and NIMBUS NUTRITION, LLC, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

**Memorandum Decision and Order – Page 1**

**INTRODUCTION**

The Court has before it Defendants' Motions to Dismiss based on insufficient service of process, lack of personal jurisdiction, expiration of the statute of limitations, Rule 12(b)(6), and immunity.  The Court heard oral argument on the motion on March 16, 2010, and now issues the following decision.

**BACKGROUND**

Derek W. Cornelius and SI03, Inc. (collectively "SI03") filed suit in Missouri state court on October 20, 2008, alleging (1) violations of the Lanham Act, 15 U.S.C. § 1125(a), (2) tortious interference with a business expectancy or prospective business relationship, (3) injurious falsehood, (4) defamation, (5) libel, and (6) civil conspiracy.  SI03 named more than fifteen defendants in the suit. SI03 asserts that the defendants were responsible for postings on the website www.bodybuilding.com which criticized Cornelius, SI03, and SI03's products. The statements at issue in this case were all posted on the Forum Message Board, on which any user can post comments.

In December, 2008, defendants Ryan DeLuca, Bryna Matthews DeLuca, and Bodybuilding.com (collectively "Bodybuilding.com") removed the case to the United States District Court for the Eastern District of Missouri.  SI03 filed a Second Amended Complaint on August 19, 2009, and several defendants moved to

dismiss.  Rather than dismiss the suit for lack of personal jurisdiction, the district court transferred the case to this Court pursuant to 28 U.S.C. § 1406(a).

After the transfer, Defendants Bodybuilding.com (Docket No. 128), SNS Nutrition ("SNS") (Docket No. 137), Scientifically Advanced Nutrition ("SAN") (Docket No. 165), ISS Research, LLC ("ISS") (Docket No. 168), and Molecular Nutrition, LLC ("Molecular") (Docket No. 169) filed Motions to Dismiss.  SI03 voluntarily dismissed Count Six, alleging civil conspiracy, as to all defendants on November 12, 2009.  The Defendants challenge the remaining counts.

## ANALYSIS

### I.    Motion to Dismiss for Insufficient Service of Process

SNS and Molecular assert that they have not been served with a summons and complaint since the transfer of this case to the District of Idaho.

#### A.    Applicable Legal Standards

When a complaint is filed in a district court that is not the proper venue for the claims, the case may be transferred to another district court in which the complaint could have been filed originally, if it suits the interests of justice.  28 U.S.C. § 1406(a).  Transfer "to remove a procedural obstacle such as lack of personal jurisdiction is favored over dismissing an action because transfer facilitates the adjudication of a dispute on its merits."  *Wilson v. St. Mary's Hosp.*,

822 F. Supp. 1450, 1451 (D. Minn. 1993).  Even if a court does not have personal

jurisdiction over the defendants, it can transfer the action to a district which may.

*Id.* (citing *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 465-66 (1962)).  Transfer of a

case "does not confer personal jurisdiction upon the court receiving the case."  *Id.*

Service of process is a prerequisite to the exercise of personal jurisdiction.

*Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987), *superseded by*

*rule*, Fed. R. Civ. P. 4(k)(2).  "[S]ervice of summons is the procedure by which a

court having venue and jurisdiction of the subject matter of the suit asserts

jurisdiction over the person of the party served."  *Miss. Publ'g Corp. v. Murphree*,

326 U.S. 438, 444-45 (1946).  Actual notice, without substantial compliance with

Federal Rule of Civil Procedure 4, is insufficient to subject defendants to personal

jurisdiction.  *Jackson v. Hayakawa*, 682 F.2d 1344, 1347 (9th Cir. 1982).

### B.     SNS's and Molecular's Motions to Dismiss

Defendants assert that SI03's claims against them should be dismissed due

to SI03's failure to serve a complaint and summons issued by this Court.  SI03

counters that re-service is not required, as Defendants clearly had notice of the

action.  *See Bentz v. Recile*, 778 F.2d 1026, 1028 n.5 (5th Cir. 1985).

Service is required following a transfer pursuant to § 1406(a) when a

decision on the merits has not been reached.  *See Wilson*, 822 F. Supp. at 1452

(requiring re-service after transfer where case was "at its inception and its merits have not been adjudicated"); *Michelson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 709 F. Supp. 1279, 1289 (S.D.N.Y. 1989) (noting that re-service in *Bentz* "would only tidy a case and require another appeal"); *see also McCurdy v. Am. Bd. of Plastic Surgery*, 157 F.3d 191, 195-96 (3d Cir. 1998).

The 1993 amendments to Rule 4 discourage "hyper-technical" compliance with the requirements of service, but only as to how service can be effectuated, not as to the requirement that a party be served.  Fed. R. Civ. P. 4 notes to 1993 Amend; *see also McCurdy*, 157 F.3d at 195-96.  SI03 also asserts that Defendants waived their objection to the lack of service by appearing at and participating in a scheduling conference.  *See Datskow v. Teledyne, Inc., Cont'l Prods. Div.*, 899 F.2d 1298, 1303 (2d Cir. 1990).  SNS's Motion to Dismiss asserting the problem with service was filed prior to the scheduling conference, and the issue of service was discussed at the conference.  Defendants have not waived their objection.

The Court will follow the "better practice" of requiring re-service following transfer.  *Bentz*, 778 F.2d at 1028 n.5.  Without service of process, the Court cannot obtain personal jurisdiction over Defendants.  SI03's complaint was filed in the District of Idaho on January 22, 2010.[1]  Thus, SI03 has until May 24, 2010 to serve

---

[1] Although the district court in Missouri ordered the case transferred on December 21, 2009, the case was not transferred into the District of Idaho until January 22, 2010.

a complaint and summons issued by this Court on Defendants.  Fed. R. Civ. P.

4(m) (providing 120 days for service).  As there is adequate time remaining for

SI03 to effectuate service, the Court will proceed with Defendants' remaining

claims as though service was complete.

## II.    Motion to Dismiss for Lack of Personal Jurisdiction

Defendants SNS, ISS, and Molecular all contest the Court's exercise of

personal jurisdiction over them.

### A.    Applicable Legal Standards

In a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2), SI03

bears the burden of proving that jurisdiction is appropriate.[2]  *Boschetto v. Hansing*,

539 F.3d 1011, 1015 (9th Cir. 2008), *cert. denied*, 129 S. Ct. 1318 (2009).  Where,

as here, the motion is based on written materials rather than an evidentiary hearing,

SI03 need only establish a prima facie showing of jurisdictional facts to withstand

the motion to dismiss.  *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995).  The

Court must take SI03's uncontroverted allegations in the complaint as true.  *Dole*

*Food Co. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002).

Where there is no applicable federal statute governing personal jurisdiction,

---

[2] SI03's Second Amended Complaint asserts jurisdiction in Missouri.  SI03 had until April 9, 2010 to amend the complaint to assert jurisdiction in Idaho.  As SI03 is required to serve a complaint and summons issued by this Court, it will be granted leave to file an amended complaint prior to May 24, 2010.  *See* Fed. R. Civ. P. 15(a)(2).

**Memorandum Decision and Order – Page 6**

the law of the state in which the district court sits applies. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). Because Idaho's long-arm statute, codified in Idaho Code § 5-514, allows a broader application of personal jurisdiction than the Due Process Clause, the Court need look only to the Due Process Clause to determine personal jurisdiction.[3]

The exercise of personal jurisdiction over a defendant comports with federal due process only if the defendant "has certain minimum contacts with the relevant forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006) (en banc) (internal quotation marks omitted). Sufficient minimum contacts gives rise to general jurisdiction or

_____

[3] In *Lake v. Lake*, 817 F.2d 1416, 1420 (9th Cir. 1987), the 9th Circuit determined that the Idaho legislature, in adopting I.C. § 5-514, "intended to exercise all the jurisdiction available to the State of Idaho under the Due Process Clause of the United States Constitution." *Lake*, 817 F.2d at 1420. The Idaho Supreme Court had so held, and continued to so hold for a few years after the *Lake* decision was rendered. *Houghland Farms, Inc. v. Johnson*, 803 P.2d 978 (Idaho 1990). More recently, however, the Idaho Supreme Court has, without commenting on this precedent, instituted a two-part test for resolving long-arm jurisdiction questions. The Court first looks at whether the defendant's conduct falls within the terms of the statute, and then looks to see whether exercising jurisdiction would comport with the Due Process Clause. In two cases, the Idaho Supreme Court has held that the defendant's conduct did fall within I.C. § 5-514, but that jurisdiction could not be exercised consistently with the Due Process Clause. *See e.g., Smalley v. Kaiser*, 950 P.2d 1248 (Idaho 1997); *Saint Alphonsus Reg'l Med. Ctr. v. Washington*, 852 P.2d 491 (Idaho 1993). These decisions imply that I.C. § 5-514 reaches beyond the limits of due process, and that the Idaho Supreme Court must use the Due Process Clause to rein in the statute's grasp. Thus, the interpretation of I.C. § 5-514 in *Lake* appears no longer accurate. The result, however, is the same – the Due Process Clause sets the limit, but the Idaho Supreme Court's new two-part test recognizes that the reach of the statute is not identical with the reach of the Due Process Clause.

**Memorandum Decision and Order – Page 7**

specific jurisdiction. *Doe v. Unocal Corp.*, 248 F.3d 915, 923 (9th Cir. 2001).

General jurisdiction applies if the defendants' activities in the forum "are

substantial, continuous and systematic," while specific jurisdiction applies if the

defendants' "less substantial contacts with the forum give rise to the cause of

action before the court." *Id.*

### B.   SNS's, ISS's, and Molecular's Motions to Dismiss

General jurisdiction exists when a defendant's contacts with the forum state

approximate physical presence. *Schwarzenegger*, 374 F.3d at 801.  Although

Defendants have sold their products to citizens of Idaho, and have shipped their

products to a warehouse in Idaho, this is insufficient to meet the high standard for

general jurisdiction. *See Brand v. Menlove Dodge*, 796 F.2d 1070, 1073 (9th Cir.

1986).

The Ninth Circuit analyzes specific jurisdiction using a three-prong test:

> (1) The non-resident defendant must purposefully direct
> his activities or consummate some transaction with the
> forum or resident thereof; or perform some act by which
> he purposefully avails himself of the privilege of
> conducting activities in the forum, thereby invoking the
> benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to
> the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair
> play and substantial justice, i.e. it must be reasonable.

**Memorandum Decision and Order – Page 8**

*Yahoo!*, 433 F.3d at 1205-06.  SI03 bears the burden of satisfying the first two prongs of the test.  *See Menken v. Emm*, 503 F.3d 1050, 1057 (9th Cir. 2007).  If SI03 succeeds in satisfying both of the first two prongs, the burden then shifts to the Defendants to "'present a compelling case' that the exercise of jurisdiction would not be reasonable."  *See id.* (quoting *Schwarzenegger*, 374 F.3d at 802).

### i.    Purposeful Direction

The first prong involves purposeful direction or purposeful availment. Purposeful direction generally applies to tort cases.  The effects test is applied by focusing on the forum where the defendants' actions were felt, whether or not the actions themselves occurred within that forum.  *Yahoo!*, 433 F.3d at 1206. Purposeful availment generally applies to cases sounding in contract.  *Brayton Purcell LLP v. Recordon & Recordon*, 575 F.3d 981, 985 (9th Cir. 2009).  The Court is not required to consider one test to the exclusion of the other.  *Yahoo!*, 433 F.3d at 1206; *see Schwarzenegger*, 374 F.3d at 803.

The effects test, derived from *Calder v. Jones*, 465 U.S. 783 (1984), requires that the defendant have "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state."  *Dole Food*, 303 F.3d at 1111.  An intentional act refers to "an intent to perform an actual, physical act in the real world, rather than an intent to

accomplish a result or consequence of that act." *Schwarzenegger*, 374 F.3d at 806.

The Court must consider all of the Defendants' contacts with the forum state, regardless of whether they involve wrongful activity. *Yahoo!*, 433 F.3d at 1207. Here, Defendants sold their products to an Idaho company and shipped those products to a warehouse in Idaho for redistribution. These are intentional acts. Posting a message on the online Forum is also an intentional act.

The next question is "whether the [defendants'] conduct was expressly aimed at the forum." *Brayton Purcell*, 575 F.3d at 986. Selling products to Bodybuilding.com, a company with its principal place of business in Idaho, is activity expressly aimed at the forum state. Shipping those products to Bodybuilding.com's warehouse in Idaho for distribution to Bodybuilding.com's customers, some of whom are located in Idaho, is also activity expressly aimed at the forum state. *See, e.g.*, *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1264-65 (6th Cir. 1996) (finding express aiming from defendant's sales and advertising of his software through an Ohio-based company), *overruled on other grounds by Cole v. Mileti*, 133 F.3d 433, 436 (6th Cir. 1998).

The statements posted on the Forum Message Board, however, are less clear-cut. Ninth Circuit case law has addressed whether the owner and operator of a website may be hailed into court in another jurisdiction, but not whether someone who uses a website owned and operated by a third party subjects themselves to the

**Memorandum Decision and Order – Page 10**

jurisdiction where the website is hosted and operated.  However, the Fifth Circuit addressed this very issue in *Revell v. Lidov*, 317 F.3d 467 (5th Cir. 2002).  Lidov, an Assistant Professor at Harvard Medical School, posted an article on a website maintained by Columbia University School of Journalism.  *Id.* at 469.  In the article, Lidov accused  the government of failing to prevent, and then covering up their knowledge of, the bombing of Pan Am Flight 103 over Lockerbie, Scotland. *Id.*  Lidov singled out Revell for criticism.  *Id.*  At the time the article was posted online, Revell was a resident of Texas.  *Id.*

The act of posting an article online did not create jurisdiction over Lidov in Texas.  Lidov's article contained no references to Texas, it did not discuss Revell's activities in Texas, and it was "not directed at Texas readers as distinguished from readers in other states."  *Id.* at 473.  While any harm from the article would hit hardest in Texas where Revell resided, a more direct targeting was required.  *Id.* at 476.

Similarly, the Ninth Circuit has consistently held that passive website activity must be accompanied by "something more" in order to confer jurisdiction in a particular forum.  *See Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1157-58 (9th Cir. 2006); *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998), *modified by, Yahoo! Inc.*, 433 F.3d 1199; *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418-19 (9th Cir. 1997).  That "something more" may be use of the

**Memorandum Decision and Order – Page 11**

website as a scheme to extort money from the plaintiff in order to release the

domain name, or purchasing print and radio advertising in the forum state.

*Panavision*, 141 F.3d at 1322; *see also Rio Properties, Inc. v. Rio Int'l*

*Interlink*, 284 F.3d 1007, 1020-21 (9th Cir. 2002).

As in *Revell*, the purportedly defamatory statements in this case failed to

mention Idaho.  The statements were not based on activities in Idaho, and they

were not directed at Idaho readers as distinguished from readers in other states.

However, there is "something more" that expressly aims the statements at Idaho –

each of the defendants and SI03 sell and ship their products to the Idaho-based

owner of the website on which the statements were posted.  The website is the

main retail outlet for Bodybuilding.com, and SI03 and the other defendants are

competitors for business through Bodybuilding.com.  In this sense, Defendants

expressly aimed the online statements at Idaho.

The final question is whether the Defendants caused harm that they knew

was likely to be suffered in the forum state.  "[T]his element does not require that

the 'brunt' of the harm be suffered in the forum."  *Brayton Purcell*, 575 F.3d at

988.  "This element is satisfied when defendant's intentional act has 'foreseeable

effects' in the forum."  *Id.*  In this case the brunt of the harm likely occurred in

Missouri, where SI03 has its principle place of business and Cornelius resides.  *See*

*Allcare Dental Mgmt., LLC v. Zrinyi*, No. CV-08-407-S-BLW, at *2 (D. Idaho Feb.

**Memorandum Decision and Order – Page 12**

4, 2009).  Harm was foreseeable in Idaho as well, though.  SI03, like Defendants,

sells its products to Bodybuilding.com for retail sale, and ships products to the

warehouse in Idaho.  It was foreseeable that SI03's sales in Idaho would drop as a

result of the allegedly defamatory postings.  Defendants' activities were

purposefully directed at the forum state.

### ii.    Relatedness

The second prong of the test asks whether the claim is one which arises out

of or relates to the defendants' forum-related activities.  The Ninth Circuit "follows

the 'but for' test."  *Menken*, 503 F.3d at 1058.  Thus, SI03 must show it would not

have suffered an injury "but for" Defendants' forum related conduct.  SI03's injury

arises out of Defendants' online postings and the fact that SI03 is a direct

competitor with Defendants for business through Bodybuilding.com.  Therefore

the claims in this suit arise out of and relate to Defendants' forum-related activities.

*See Yahoo!*, 433 F.3d at 1205-06.

### iii.    Reasonableness

Finally, because SI03 has satisfied the first two prongs of the test for specific

jurisdiction, the burden shifts to Defendants "to 'present a compelling case' that

the exercise of jurisdiction would not be reasonable."  *Menken*, 503 F.3d at 1060

(quoting *Schwarzenegger*, 374 F.3d at 802).  To determine reasonableness, *Menken*

provides the following factors:

**Memorandum Decision and Order – Page 13**

> (1) the extent of the defendant's purposeful interjection
> into the forum state's affairs; (2) the burden on the
> defendant of defending in the forum; (3) the extent of
> conflict with the sovereignty of the defendant's state; (4)
> the forum state's interest in adjudicating the dispute; (5)
> the most efficient judicial resolution of the controversy;
> (6) the importance of the forum to the plaintiff's interest
> in convenient and effective relief; and (7) the existence of
> an alternative forum.

Some cases in the Ninth Circuit "have suggested that once the minimum contacts threshold is met the degree of intrusion into the forum becomes irrelevant." *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1488 (9th Cir. 1993), *modified by, Yahoo! Inc.*, 433 F.3d 1199.  Other cases provide that "[e]ven if there is sufficient 'interjection' into the state to satisfy the [purposeful direction prong], the degree of interjection is a factor to be weighed in assessing the overall reasonableness of jurisdiction." *Id.* (quoting *Ins. Co. of N. Am. v. Marina Salina Cruz*, 649 F.2d 1266, 1271 (9th Cir. 1981)).  When purposeful interjection is small, jurisdiction is less likely to be anticipated and therefore its exercise is less reasonable. *Id.*  In this case, Defendants have interjected themselves into the forum such that being hailed into the state would not be unexpected, even if the identity of the plaintiff is.  The first factor favors SI03.

The Court acknowledges that Defendants, companies based in Florida and North Carolina, may be burdened by litigating in Idaho.  However, "with the advances in transportation and telecommunications and the increasing interstate

**Memorandum Decision and Order – Page 14**

practice of law, any burden is substantially less than in days past." *Menken*, 503

F.3d at 1062.  Indeed, even where a defendant must travel from a foreign country,

"this factor is not dispositive" as to the reasonableness of exercising personal

jurisdiction.  *Dole Food*, 303 F.3d at 1115.  Therefore, although the second factor

favors Defendants, the Court does not find it very persuasive.

As for the third factor, Defendants do not contend that Idaho's exercise of

personal jurisdiction would conflict with the sovereignty of Florida or North

Carolina.  The fourth factor addresses Idaho's interest in adjudicating the suit.

Although not strong, this factor favors SI03 as well.  Idaho has an interest in

redressing tortious conduct committed through one of its corporate residents.  *See,*

*e.g.*, *Menken*, 503 F.3d at 1060.

"In evaluating [the fifth] factor, we have looked primarily at where the

witnesses and the evidence are likely to be located."  *Id.* at 1060-61.  Although

there may be some evidence in Idaho, it is more likely to be located in Florida,

North Carolina, and Missouri.  This factor favors Defendants.  As for the sixth

factor, the convenience and effectiveness of relief for SI03, "the plaintiff's

convenience is not of paramount importance."  *Id.* at 1061.  However, this factor

strongly favors SI03, because Idaho may be the only forum in which it can obtain

relief as to all defendants at one time.  The final factor is the availability of an

alternate forum.  Undoubtedly, SI03 could bring suit against each defendant in the

**Memorandum Decision and Order – Page 15**

defendant's home jurisdiction.  The seventh factor favors Defendants.

Weighing all seven factors, the balance of considerations does not favor Defendants; they have not "presented a compelling case that the exercise of jurisdiction would be unreasonable."  *Id.*  The Court will therefore exercise personal jurisdiction over Defendants.

## III.    Motion to Dismiss Based on the Statute of Limitations

All Defendants move to dismiss SI03's claims pursuant to Federal Rule of Civil Procedure 12(b)(6) as time barred.

### A.    Applicable Legal Standards

A federal district court sitting in diversity must apply the forum state's choice of law rules to determine the controlling substantive law.  *Fields v. Legacy Health Sys.*, 413 F.3d 943, 950 (9th Cir. 2005).  Idaho applies the "most significant relation test" as set forth in the Restatement (Second) Conflict of Laws § 145 to determine the applicable law.  *Grover v. Isom*, 53 P.3d 821, 823-24 (Idaho 2002).  In tort cases, courts consider the following facts in making their determination: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered."  *Id.* at 824.  The most important factor is where the injury occurred.  *Id.*

**Memorandum Decision and Order – Page 16**

Where the injury is the result of allegedly defamatory statements made in internet postings, those postings would have a greater negative effect in SI03's home town in Missouri. *Allcare Dental Mgmt*, No. CV-08-407-S-BLW, at *2. Therefore the injury occurred in Missouri. The other factors implicate numerous states, though none strongly. Missouri has the "most significant relation" to the case and this Court will apply Missouri law.

A claim should only be dismissed under Rule 12(b)(6) on the ground that it is barred by the statute of limitations where "it appears from the face of the complaint itself that the limitation period has run." *Guy v. Swift & Co.*, 612 F.2d 383, 385 (8th Cir. 1980); *see also Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010).

### B. Bodybuilding.com's, SNS's, SAN's, ISS's, and Molecular's Motions to Dismiss

#### i. Counts Three Through Five

SI03 concedes that the statute of limitations for defamation claims is two years in Missouri, and that most of Defendants' alleged statements were posted more than two years before the complaint was filed. *See* Mo. Rev. Stat. § 516.140. Therefore the injurious falsehood, defamation, and libel claims are barred as to Bodybuilding.com, SNS, ISS, and SAN. One statement attributed to Molecular was posted within the statute of limitations, while the other statement is barred.

**Memorandum Decision and Order – Page 17**

### ii.      Count Two - Tortious Interference

Tortious interference with a business expectancy or prospective business relationship has a statute of limitations of five years.  Mo. Rev. Stat. § 516.120(4); *D'Arcy & Assocs., Inc. v. K.P.M.G. Peat Marwick, L.L.P.*, 129 S.W. 3rd 25, 29 (Mo. Ct. App. 2004).  However, the "gravamen" of the complaint determines "whether the cause of action is for defamation or tortious interference." *Wenthe v. Willis Corroon Corp.*, 932 S.W.2d 791, 796 (Mo. Ct. App. 1996).

In *Wenthe*, the Missouri Court of Appeals determined that the statute of limitations for tortious interference applied because "a fair reading of the petition indicates the gist of Wenthe's allegations sought redress for the alleged tortious interference by General Dynamics, and was not an attempt to subvert the statute of limitations for a slander action."  932 S.W.2d at 796.  The defamatory statements in that case were only one way in which Wenthe alleged General Dynamics interfered with the contract.  *Id.* at 794-95.

Conversely, in *Sports Unlimited, Inc. v. Lankford Enterprises, Inc.*, the United States District Court for the District of Kansas found the plaintiff's claim was "'clearly and solely based' on defamatory statements made or disseminated by defendant."  93 F. Supp. 2d 1164, 1168 (D. Kan. 2000), *aff'd* 275 F.3d 996 (10th Cir. 2002) (citation omitted).  The plaintiff "alleged no conduct whatsoever by defendant that [did] not depend for its relevance on 'whether the statements . . .

**Memorandum Decision and Order – Page 18**

[were] true or false.'" *Id.*  Therefore, the gravamen of the action was the "defamatory nature of defendant's communication," and the claim for tortious interference constituted a defamation claim dressed in a different fashion.  *Id.*

The analysis of *Sports Unlimited* is more applicable in the instant case.  SI03 has alleged that the Defendants interfered only through their "commercial postings and their false and misleading statements."  Thus, the only conduct alleged to be tortious depends for its relevance on whether the statements are true or false.  *Id.*  The gravamen of SI03's tortious interference claim is the defamatory nature of the postings.  Therefore, the two-year statute of limitations for defamation claims applies to Count Two, and bars the claim.

### iii.    Count One - Violation of Lanham Act

The Lanham Act does not contain a statute of limitations.  "When Congress has created a cause of action and has not specified the period of time within which it may be asserted, the Court has frequently inferred that Congress intended that a local time limitation should apply."  *Occidental Life Ins. Co. of Cal. v. EEOC*, 432 U.S. 355, 367 (1977), *superseded by statute on other grounds*, 29 C.F.R. § 1601.28 (1995).  However, the state statute of limitations is not applied mechanically.  *Id.*  "State limitations periods will not be borrowed if their application would be inconsistent with the underlying policies of the federal statute."  *Id.*

SI03 asserts that its cause of action under the Lanham Act resembles fraud,

**Memorandum Decision and Order – Page 19**

with a five-year statute of limitations.  *See* Mo. Rev. Stat. § 516.120(5).

Defendants urge the Court to adopt the two-year statute applicable to defamation

claims.  Other courts which have addressed this issue have analogized to trademark

infringement, fraud, and defamation.  *See Miller v. Glenn Miller Prods., Inc.*, 454

F.3d 975, 997 n.11 (9th Cir. 2006); *PepsiCo, Inc. v. Dunlop Tire & Rubber Corp.*,

578 F. Supp. 196, 199 (S.D.N.Y. 1984); *Bedi Photographic Corp. v. Polaroid

Corp.*, No. 76-1107 (E.D. Pa. Aug. 11, 1980).

   While the purpose of the Lanham Act is to address deception and unfair

competition, the essential elements of the claim as filed by SI03 dictate the

analogous state statute.  15 U.S.C. § 1125(a); *see Wenthe*, 932 S.W.2d at 796.

SI03 asserts that the Defendants posted "false and misleading statements about

SI03's products."  At its heart, this claim is about defamation.

   However, SI03 asserts that the statute of limitations cannot serve to bar a

claim under the Lanham Act because the doctrine of laches must be applied.

Laches is an equitable defense to an untimely claim.  *Jarrow Formulas, Inc. v.

Nutrition Now, Inc.*, 304 F.3d 829, 835 (9th Cir. 2002).  A plaintiff can recover

damages under the Lanham Act "subject to the principles of equity."  15 U.S.C. §

1117(a).  Laches is the proper doctrine for determining the timeliness of a Lanham

Act claim. *Jarrow Formulas*, 304 F.3d at 835-37.[4]  This is true even if the only

relief sought is damages.  *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 822 (7th

Cir. 1999); *see also Jarrow Formulas*, 304 F.3d at 836.

"[L]aches penalizes inexcusable dilatory behavior." *Jarrow Formulas*, 304

F.3d at 838.  If a plaintiff files suit after the statute of limitations has expired, there

is a strong presumption that laches bars the claim.  *Id.*  Laches requires proof that

the "delay in filing suit was unreasonable" and that Defendants "would suffer

prejudice caused by the delay if the suit were to continue." *Id.*  The length of the

delay is "measured from the time the plaintiff knew or should have known about its

potential cause of action."  *Id.*

The statements attributed to Defendants were posted in January 2004 (SAN),

May 2005 (ISS), May 2006 (Molecular), August and September 2006 (SNS), and

April 2007 (Molecular).  SI03 filed its initial complaint on October 28, 2008.  In its

Second Amended Complaint filed on August 19, 2009, SI03 attributed a statement

to Bodybuilding.com from May 2007.  The delay in asserting the claims ranges

from a little more than eighteen months to just over four years and nine months.

_____

[4] Other courts agree.  *See Parks v. ABC, Inc.*, 341 Fed. App'x 737, *2 (2d Cir. 2009); *Santana Prods., Inc. v. Bobrick Washroom Equip., Inc.*, 401 F.3d 123, 140 (3rd Cir. 2005); *Ford Motor Co. v. Catalanotte*, 342 F.3d 543, 550 (6th Cir. 2003); *Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 799 (4th Cir. 2001); *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 822 (7th Cir. 1999); *Kason Indus., Inc. v. Component Hardware Group, Inc.*, 120 F.3d 1199, 1203 (11th Cir. 1997); *Cynergy Ergonomics, Inc. v. Ergonomic Partners, Inc.*, No. 4:08-CV-243 (JCH), at *3 (E.D. Mo. July 21, 2008).

Only one of the statements would fall within the two-year statute of limitations.

Defendants did not move to dismiss the Lanham Act claim due to laches. SI03 has not presented any information indicating when it knew of the allegedly defamatory statements or reasons for the delay.  Nor have Defendants argued prejudice.  The Court therefore lacks sufficient information to determine whether the claim is barred by the doctrine of laches, and cannot dismiss the claim.

## IV.    Motion to Dismiss under Rule 12(b)(6)

SAN, ISS, and Molecular moved to dismiss all counts against them because SI03 has failed to allege sufficient facts to state a claim.  Only Count One – alleging a violation of the Lanham Act –  remains as to SAN and ISS.  Counts Two through Four remain as to Molecular for the statement posted on April 4, 2007, while Count One incorporates both the April 4 statement and the statement posted on May 11, 2006.

### A.    Applicable Legal Standards

 "Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," it must set forth "more than labels and conclusions,

**Memorandum Decision and Order – Page 22**

and a formulaic recitation of the elements of a cause of action will not do." *Id*.  To

survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to "state a claim to relief that is plausible on its face." *Id*. at 570.

A claim has facial plausibility when the plaintiff pleads facts allowing the court to

draw the reasonable inference that the defendant is liable for the misconduct

alleged. *Id*. at 556.  The plausibility standard is not akin to a "probability

requirement," but it asks for more than a sheer possibility that a defendant has

acted unlawfully. *Id*.

In a more recent case, the Supreme Court explained that "the tenet that a

court must accept as true all of the allegations contained in a complaint is

inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

"Rule 8 marks a notable and generous departure from the hyper-technical,

code-pleading regime of a prior era, but it does not unlock the doors of discovery

for a plaintiff armed with nothing more than conclusions." *Id.* at 1950.  Further,

"[d]etermining whether a complaint states a plausible claim for relief will . . . be a

context-specific task that requires the reviewing court to draw on its judicial

experience and common sense." *Id.*

A dismissal without leave to amend is improper unless it is beyond doubt

"that the complaint could not be saved by any amendment." *Manzarek v. St. Paul

Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008); *see also Law Offices*

**Memorandum Decision and Order – Page 23**

*of Gary Green, P.C. v. Morrissey*, 210 S.W.3d 421, 424-25 (Mo. Ct. App. 2006).

The Ninth Circuit has held that "in dismissals for failure to state a claim, a district

court should grant leave to amend even if no request to amend the pleading was

made, unless it determines that the pleading could not possibly be cured by the

allegation of other facts." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv.,

Inc.,* 911 F.2d 242, 247 (9th Cir. 1990). "[T]he issue is not whether a plaintiff will

ultimately prevail but whether the claimant is entitled to offer evidence to support

the claims." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 184 (2005).

SI03 asserts that SAN, ISS, and Molecular all violated section 1125(a)(1)(B)

of the Lanham Act.  That section provides:

> Any person who, on or in connection with any goods or
> services . . . uses in commerce any . . . false or misleading
> description of fact, or false or misleading representation
> of fact, which – . . . in commercial advertising or
> promotion, misrepresents the nature, characteristics, [or]
> qualities . . . of his or her or another person's goods, . . .
> or commercial activities, shall be liable in a civil action
> by any person who believes that he or she is or is likely
> to be damaged by such act.

In order to state a claim for false advertising under section 1125(a) of the Lanham

Act, SI03 must show

> 1) in advertisements, defendant made false statements of
> fact about its own or another's product; 2) those
> advertisements actually deceived or have the tendency to
> deceive a substantial segment of their audience; 3) such
> deception is material, in that it is likely to influence the

**Memorandum Decision and Order – Page 24**

> purchasing decision; 4) defendant caused its falsely
> advertised goods to enter interstate commerce; and 5)
> plaintiff has been or is likely to be injured as the result of
> the foregoing either by direct diversion of sales from
> itself to defendant, or by lessening of the goodwill which
> its products enjoy with the buying public.

*Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1180 (9th Cir. 2003).  A statement

constitutes commercial advertising or promotion when it is

> 1) commercial speech; 2) by a defendant who is in
> commercial competition with plaintiff; 3) for the purpose
> of influencing consumers to buy defendant's goods or
> services.  While the representations need not be made in
> a "classic advertising campaign," but may consist instead
> of more informal types of "promotion," the
> representations 4) must be disseminated sufficiently to
> the relevant purchasing public to constitute "advertising"
> or "promotion" within that industry.

*Id.* at 1181.  "The core notion of commercial speech is speech which does no more

than propose a commercial transaction."  *Id.* (internal quotation marks omitted).

## B.    SAN's Motion to Dismiss

SAN asserts that the statement attributed to it cannot constitute a violation of

the Lanham Act because it is not a "false or misleading description of fact, or false

or misleading representation of fact."  Rather, SAN insists the statement is mere

puffery, and therefore not actionable.

Puffing immunizes a statement from liability under the Lanham Act.  *Cook,*

*Perkiss & Liehe*, 911 F.2d at 245.  It is the Court's responsibility to determine as a

**Memorandum Decision and Order – Page 25**

matter of law whether a statement is one of fact, and therefore actionable, or mere

puffery.  *Id.*  The common theme distinguishing puffery from statements of fact is

that "consumer reliance will be induced by specific rather than general assertions."

*Id.* at 246.  "Vague and subjective" statements are generally considered puffery,

while a "specific and measurable claim, capable of being proved false or of being

reasonably interpreted as a statement of objective fact" is actionable.  *Coastal*

*Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999).

This analysis is similar to the test used to determine whether a statement is a

factual assertion in defamation cases:

> First, we look at the statement in its broad context, which
> includes the general tenor of the entire work, the subject
> of the statements, the setting, and the format of the work.
> Next we turn to the specific context and content of the
> statements, analyzing the extent of figurative or
> hyperbolic language used and the reasonable
> expectations of the audience in that particular situation.
> Finally, we inquire whether the statement itself is
> sufficiently factual to be susceptible of being proved true
> or false.

*Underwager v. Channel 9 Austl.*, 69 F.3d 361, 366 (9th Cir. 1995).

The statement attributed to SAN is, "You are obviously a Syntrax pimp.

Why don't you have Cornholio stand up for himself?  I know at least a half a dozen

lawyers who want to crucify him for his reckless behavior."

This statement was clearly made in response to another post on the Forum.

**Memorandum Decision and Order – Page 26**

It uses figurative and hyperbolic language to express disagreement with the other post.  Calling the other person a "Syntrax pimp" is not meant to imply that Syntrax[5] employed people to engage in criminal activities.  Rather, it is meant to disparage the third person's objectivity.  Calling Cornelius "Cornholio" is not a statement of fact.  Cornholio is the alter-ego of a cartoon character, Beavis, from "Beavis and Butt-Head."  *See* Beavis, in Wikipedia, the Free Encyclopedia, http://en.wikipedia.org/wiki/Beavis, last visited on April 8, 2010[6].  While being compared to Cornholio is not flattering, it is not a "specific and measurable claim." Nor can it be reasonably interpreted as a statement of objective fact.

The final sentence in the post is also hyperbolic exaggeration.  A reasonable reader would not interpret the statement to mean that there are six or more attorneys who actually want to crucify Cornelius.  While the statement states that Cornelius has been "reckless," it does not provide a context for the recklessness. This is a vague and subjective statement, and therefore it is non-actionable puffery. Taken all together, the entire statement is mere puffery.

SI03 has failed to state a Lanham Act violation against SAN.  Without a description or representation of <u>fact</u>, there can be no false advertising.  Leave to

---

[5] Syntrax Innovations, Inc. sold the bulk of its assets, including the Syntrax brand, to SI03 in 2004.

[6] The Court does not encourage citations to Wikipedia.  However, in rare circumstances, citation to a pop-culture encyclopedia is necessary in order to explain a pop-culture character.

**Memorandum Decision and Order – Page 27**

amend will be denied.  Because the statement is not a factual representation, no amendment could cure the defect.  *See Cook, Perkiss & Liehe*, 911 F.2d at 247.

### C.     ISS's Motion to Dismiss

ISS also asserts that the statements attributed to it are puffery, and therefore not actionable.  It further asserts that SI03 has failed to show false statements regarding its products or commercial activities in advertisement.

The first statement is "I would stick w/Ergopharm and primaforce because syntrax has had label claim issues."  The second is, "Syntrax has some label claim problems."  These statements are both vague allusions to problems with Syntrax's labels.  However, they do support the interpretation that they are objective statements of fact.  Whether or not Syntrax has had problems with label claims is capable of being proven true or false.  Therefore, the statements are not puffery.

However, the statements cannot be considered commercial advertising.  The second statement, that  "Syntrax has some label claim problems." is not commercial speech because it does not propose a commercial transaction.  *See Rice*, 330 F.3d at 1181.  The first statement does propose a commercial transaction, and is commercial speech.  ISS is in commercial competition with SI03.  However, the purpose of the statement was not to influence consumers to purchase ISS's products.  *See id.*  The purpose was to discourage consumers from purchasing SI03's products, but directed consumers to Ergopharm and Primaforce.  Therefore

**Memorandum Decision and Order – Page 28**

the statement is not commercial advertising.  *Id.*

SI03 has failed to state a Lanham Act violation against ISS.  The statements

attributed to ISS are not commercial advertising.  Leave to amend will be denied.

Because the statements are not commercial advertising, no amendment could cure

the defect.  *See Cook, Perkiss & Liehe*, 911 F.2d at 247.

### D.    Molecular's Motion to Dismiss

#### i.    Lanham Act

Molecular asserts that the statements attributed to it are puffery.  The first

statement is "Syntrax has secret operatives? Could it Be?  . . . I just think everyone

should be aware of the dishonest tactics used by this company.  And there's even

more stuff you don't know about."  The second statement is "IMO [In My

Opinion] it's not so much the HFCS [high fructose corn syrup] that people are

worried about but the recent reports of possible use of contaminated / spoiled

protein powder.  I think most people remember the threads / posts about Creative

Compounds attempting to import protein that was unfit for human consumption."

The questions of the first statement are vague, subjective, and rhetorical

hyperbole.  The remaining two sentences in the first statement are also vague.

They do not include specific and measurable claims capable of being proved false

or interpreted as statements of objective fact.  The first statement attributed to

Molecular is non-actionable puffery.  *See Cook, Perkiss & Liehe*, 911 F.2d at 246;

**Memorandum Decision and Order – Page 29**

*Coastal Abstract Serv.*, 173 F.3d at 731.

The second statement attributed to Molecular was posted in regard to a product developed by Syntrax.  The statement begins with "In My Opinion."  SI03 asserts that the author's opinion is very limited and should not distract the Court from the underlying factual assertions.  However, the opinion covers the entire sentence.  The author is expressing his opinion that people may be worried, and why they may be worried.  The reference to attempted importation of protein unfit for human consumption relates to a different company entirely.  The two statements together explain the basis for the author's opinion that people may be worried.  Even so, the statement is vague and subjective – it does not contain specific and measurable claims.  Therefore the statement is non-actionable.  *See Cook, Perkiss & Liehe*, 911 F.2d at 246; *Coastal Abstract Serv.*, 173 F.3d at 731.

SI03 has failed to state a Lanham Act violation against Molecular.  Both statements attributed to Molecular are puffery.  Without a description or representation of <u>fact</u>, there can be no false advertising.  Leave to amend will be denied.  Because the statements are not factual representations, no amendment could cure the defect.  *See Cook, Perkiss & Liehe*, 911 F.2d at 247.

### ii.   Tortious Interference with Business Expectancy, Injurious Falsehood, Defamation, and Libel

The remaining claims asserted against Molecular all relate to the statement,

**Memorandum Decision and Order – Page 30**

"IMO it's not so much the HFCS that people are worried about but the recent reports of possible use of contaminated/spoiled protein powder.  I think most people remember the threads/posts about Creative Compounds attempting to import protein that was unfit for human consumption."

Under Missouri law, one of the elements of tortious interference with business expectancy or prospective business relationship is that the action taken was done without justification.  *Nazeri v. Mo. Valley Coll.*, 860 S.W.2d 303, 316 (Mo. 1993) (en banc).  An act that is independently wrongful, such as defamation, shows an absence of justification.  *Id.* at 317.  Similarly, "[d]efamation analysis applies to the tort of injurious falsehood."  *State ex rel. Diehl v. Kintz*, 162 S.W.3d 152, 156 n.4 (Mo. Ct. App. 2005).

Defamation entails "1) publication, 2) of a defamatory statement, 3) that identifies the plaintiff, 4) that is false, 5) that is published with the requisite degree of fault, and 6) damages the plaintiff's reputation."  *Johnson v. Allstate Indem. Co.*, 278 S.W.3d 228, 235 (Mo. Ct. App. 2009).

> First, in determining whether a statement of fact is defamatory, the words must be stripped of any pleaded innuendo and construed in their most innocent sense. *Nazeri*, 860 S.W.2d at 306.  The alleged defamatory words must also be considered in context, and the words are given their plain and ordinarily understood meaning. *Id.*  The alleged defamatory words "'are to be taken in the sense which is most obvious and natural and according to [the] ideas they are calculated to convey to those to

**Memorandum Decision and Order – Page 31**

> whom they are addressed.'"  *Id.*  Although these
> standards are not "absolutely consistent," "they should be
> read together."  *Id.*  Whether the language at issue is
> defamatory is a question of law.  *Sterling v. Rust*
> *Commc'ns*, 113 S.W.3d 279, 281 (Mo. Ct. App. 2003).

*Diehl*, 162 S.W.3d at 155 (alteration in original).  Whether or not an opinion is

defamatory depends on "whether a reasonable factfinder could conclude that the

statement implies an assertion of objective fact."  *Id.*  "The issue of falsity relates

to the *defamatory* facts implied by a statement-in other words, whether the

underlying statement about the plaintiff is demonstrably false."  *Nazeri*, 860

S.W.2d at 314 (emphasis in original).  Furthermore, "neither 'imaginative

expression' nor 'rhetorical hyperbole' is actionable as defamation."  *Diehl*, 162

S.W.3d at 155 (quoting *Nazeri*, 860 S.W.2d at 314).

In its most innocent sense, the statement expresses an opinion about what

may be worrying some people regarding one of SI03's products.  In context, the

plain and ordinary meaning of the words is the same – it explains the basis for the

author's opinion of other peoples' fears.  The objective fact implied by the

statement is that there have been <u>reports</u> of possible use of contaminated or spoiled

protein powder.  And while the existence of these reports is an objective fact, the

underlying statement is about SI03 only indirectly, and is not itself a defamatory

fact.  The author is offering his opinion that the reports may have caused fear, he is

not asserting that the reports are true or that SI03's product contains contaminated

**Memorandum Decision and Order – Page 32**

or spoiled protein powder.  To find, as SI03 urges, that this statement objectively

asserts that SI03's products contain spoiled protein powder would require the

Court to attribute the statements in the reports to Molecular, when they were in fact

made by an unknown third person.  Therefore the opinion is protected by the First

Amendment and is not a defamatory statement.  *See Nazeri*, 860 S.W.2d at 314

(discussing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18 (1990)).

SI03 has failed to state a required element for each claim.  Leave to amend

will be denied.  As the statement attributed to Molecular is a non-defamatory

opinion, amendment could not cure the inadequacy of the pleading.  *Law Offices of*

*Gary Green*, 210 S.W.3d at 425.

## V.      Motion to Dismiss Due to Immunity under the Communications Decency Act

Bodybuilding.com moved to dismiss Count One  – alleging a violation of the

Lanham Act – for failure to state a claim under Federal Rule of Civil Procedure

12(b)(6).  Specifically, Bodybuilding.com alleges it is immune from suit pursuant

to the Communications Decency Act of 1996.

### A.      Applicable Legal Standards

The Communications Decency Act provides that "[n]o provider or user of an

interactive computer service shall be treated as the publisher or speaker of any

information provided by another information content provider."  47 U.S.C. §

**Memorandum Decision and Order – Page 33**

230(c)(1).  Congress enacted this section "for two basic policy reasons: to promote the free exchange of information and ideas over the Internet and to encourage voluntary monitoring for offensive or obscene material."  *Carafano v. Metrosplah.com, Inc.*, 339 F.3d 1119, 1122 (9th Cir. 2003).  An interactive computer service is "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet."  47 U.S.C. § 230(f)(2).  An information content provider is "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service."  *Id.* § 230(f)(3).

Federal courts have treated § 230 immunity as "quite robust, adopting a relatively expansive definition of 'interactive computer service' and a relatively restrictive definition of 'information content provider.'"  *Carafano*, 339 F.3d at 1123.  An interactive computer service "qualifies for immunity so long as it does not also function as an 'information content provider' for the portion of the statement or publication at issue."  *Id.*  "[T]herefore, so long as a third party willingly provides the essential published content, the interactive service provider receives full immunity regardless of the specific editing or selection process."  *Id.* at 1124.  In order for immunity to apply, Bodybuilding.com must be a provider or

**Memorandum Decision and Order – Page 34**

user of an interactive computer service, the asserted Lanham claim must treat Bodybuilding.com as the publisher or speaker, and the statement at issue must have been provided by another information content provider.  *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1100-01 (9th Cir. 2009); *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997).

### B.      Bodybuilding.com's Motion to Dismiss

Bodybuilding.com asserts that the Lanham Act claim should be dismissed because it is immune from liability for statements attributed to other defendants.  It also asserts that the person who posted the statement attributed to it was not "working for or on behalf of" the company when the post was made and therefore must be considered the statement of "another information content provider."

Bodybuilding.com is an interactive computer service.  The website Defendant runs is an "information service . . . that . . . enables computer access by multiple users to a computer server."  47 U.S.C. § 230(f)(2).  Therefore, the website is a "provider" of interactive computer service.  *See DiMeo v. Max*, 433 F. Supp. 2d 523, 529 (E.D. Pa. 2006), *aff'd*, 248 Fed. App'x 280 (3rd Cir. 2007).  The website is also a "user" of interactive computer service, because it must access the Internet in order to exist and be used by the public.  *Id.* at 530; *see also Batzel v. Smith*, 333 F.3d 1018, 1030 (9th 2003).

For purposes of the Lanham Act claim, SI03 is treating Bodybuilding.com as

**Memorandum Decision and Order – Page 35**

the publisher or speaker of the statements.  SI03's claim hinges on "false and misleading statements . . . , descriptions . . . , or . . . representations of fact."  For Bodybuilding.com to be liable, it must be the speaker or publisher of those false and misleading facts.  *See Barnes*, 570 F.3d at 1102.

Whether or not the statements were provided by "another information content provider" is strenuously debated.  The majority of the offensive statements listed in SI03's complaint are attributed to other defendants.  SI03 asserts that because Bodybuilding.com appointed moderators on the Forum, and allowed the moderators to censor the content of the Forum, Bodybuilding.com is a speaker or publisher for every objectionable statement.  The Court is not persuaded.

It is clear that an interactive computer service cannot be held liable for the statements of another person merely by exercising the standard functions of a publisher.  *See id.* at 1102-03; *Batzel*, 333 F.3d at 1031; *Zeran*, 129 F.3d at 330.  "[P]ublication involves reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content."  *Barnes*, 570 F.3d at 1102.  The Ninth Circuit has "insisted that section 230 protects from liability 'any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online.'"  *Id.* at 1103 (quoting *Fair Hous. Council of San Fernando Valley v. Roommates.com*, 521 F.3d 1157, 1170-71 (9th Cir. 2008)); *see also Batzel*, 333 F.3d at 1031 ("[T]he exclusion of 'publisher' liability necessarily precludes

**Memorandum Decision and Order – Page 36**

liability for exercising the usual prerogative of publishers to choose among proffered material and to edit the material published while retaining its basic form and message."). Therefore, any statement attributed to another defendant is "information provided by another information content provider" for which Bodybuilding.com cannot be held liable.

The only statement attributed to Bodybuilding.com is the statement posted by INGENIUM on May 2, 2007. Despite SI03's assertion in the complaint, Bodybuilding.com insists that INGENIUM was not a moderator or its representative on May 2 and therefore it cannot be held liable for this statement. To support its point, Bodybuilding.com relies on an unpublished decision from the District of Oregon, *Higher Balance, LLC v. Quantum Future Group, Inc.*, No. 08-233-HA (D. Or. Dec. 18, 2008). In that case, the court reviewed a motion to strike pursuant to Oregon's anti-SLAPP statute. The plaintiff was held to the higher burden of providing substantial evidence to support a prima facie case. *Id.* at *2-3. The court held that the plaintiff failed to show that the online forum moderators were also employees of the defendant, and therefore the statements of the moderators were provided by another information content provider. *Id.* at *7.

In this case, SI03 is held to the significantly lower standard of showing a plausible claim for relief. *Twombly*, 550 U.S. at 570. SI03 has alleged that Bodybuilding.com appoints moderators to act as representatives of the company to

**Memorandum Decision and Order – Page 37**

control and edit the Forum.  SI03 further alleges that INGENIUM is a moderator, and was acting within the scope and course of his or her representation when the May 2, 2007, statement was posted.  As such, SI03 has stated a plausible claim for relief.  Therefore, Bodybuilding.com is not entitled to immunity with regards to the statement posted by INGENIUM.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Defendants Ryan DeLuca's, Bryna Mattews DeLuca's, and Bodybuilding.com's Motions to Dismiss for Expiration of the Statute of Limitations (Docket No. 128) shall be, and the same is hereby, GRANTED with prejudice as to Counts Two through Five only. Defendants' Motions to Dismiss for Failure to State a Claim in Count One shall be, and the same is hereby, GRANTED IN PART as to all statements attributed to other defendants and DENIED IN PART as to the statement of INGENIUM.

IT IS FURTHER ORDERED that Defendant SNS Nutritions's Motion to Dismiss for Expiration of the Statute of Limitations (Docket No. 137) shall be, and the same is hereby, GRANTED with prejudice as to Counts Two through Five only.  Defendant's Motion shall be, and the same is hereby, DENIED as to Count One.

IT IS FURTHER ORDERED that Defendant Scientifically Advanced Nutrition's Motion to Dismiss for Expiration of the Statute of Limitations and

**Memorandum Decision and Order – Page 38**

Failure to State a Claim (Docket No. 165) shall be, and the same is hereby, GRANTED with prejudice.

IT IS FURTHER ORDERED that Defendant ISS Research's Motion to Dismiss for Expiration of the Statute of Limitations and Failure to State a Claim (Docket No. 168) shall be, and the same is hereby, GRANTED with prejudice.

IT IS FURTHER ORDERED that Defendant Molecular Nutrition's Motion to Dismiss for Expiration of the Statute of Limitations and Failure to State a Claim (Docket No. 169) shall be, and the same is hereby, GRANTED with prejudice.

IT IS FURTHER ORDERED that Plaintiffs Derek W. Cornelius and SI03, Inc., will serve all remaining Defendants with an amended complaint asserting only claims not dismissed herein and a summons properly issued from this Court by May 24, 2010.

DATED:  **April 26, 2010**

Honorable B. Lynn Winmill
Chief U. S. District Judge

**Memorandum Decision and Order – Page 39**