UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DEREK W. CORNELIUS and SI03, INC., a Delaware corporation,<br><br>        Plaintiff,<br><br>   v.<br><br>RYAN DELUCA d/b/a BODY BUILDING.COM; BYRNA MATTHEWS DELUCA d/b/a BODYBUILIDING.COM; BODYBUILDING.COM, LLC; MOLECULAR NUTRITION, LLC; M.A.N. SPORTS, INC.; DESIGNER SUPPLEMENTS, INC.; GASPARI NUTRITION, INC.; THERMOLIFE INTERNATIONAL, LLC; ADVANCED NUTRITION; UNIQUE NUTRITION, INC.; ENGINEERED SPORTS TECHNOLOGY, LLC; PALO ALTO LABS; SNS NUTRITION; BODY WELL NUTRITION, LLC; ISS RESEARCH; ERGOPHARM, INC.; BETANCOURT NUTRITION, INC.; and NIMBUS NUTRITION, LLC,<br><br>        Defendants. | Case No. 1:10-cv-027-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

# INTRODUCTION

Before the Court are Plaintiffs' Motion for Leave to File Third Amended Complaint (Dkt. 210) and Defendant Bodybuilding.com's motions to dismiss and for summary judgment (Dkt. 218). Also before the Court is the issue of whether Plaintiffs may discover the identity of Bodybuilding.com's forum moderators.

The Court heard oral argument on November 10, 2010, and took the motion under advisement. For the reasons set forth below, the Court will deny the motion to dismiss and will allow Plaintiffs to amend their Complaint, assuming they can allege sufficient facts to support a cognizable claim.

With respect to Plaintiffs' discovery request for the identity of the forum moderators, the Court finds that Plaintiffs may discover the identity of INGENIUM. However, Plaintiffs have not come forward with enough reasons to justify allowing them to discover the identity of any and all moderators who post anonymously on Bodybuilding.com's forums.

# BACKGROUND

Plaintiff SI03 manufactures and markets a line of "nutraceutical products." Defendant Bodybuilding.com operates the internet website www.bodybuilding.com as a marketplace for the sale of nutraceutical products similar to those manufactured by SI03 and the other defendants, including Gaspari Nutrition, Inc. As part of its website, Bodybuilding.com operates "forums," where members of the public, including representatives of SI03's competitors, may post comments and discuss available products.

The forums direct the public to other pages in the website where nutraceutical products of SI03 and the other Defendants are offered for sale. According to Plaintiffs, Bodybuilding.com appoints moderators to act as representatives of the company to control and edit the forums.

In this lawsuit, Plaintiffs allege that certain competitors of Plaintiffs, with the assistance of Bodybuilding.com, engaged in a pattern and practice of posting disparaging and false comments about Cornelius, SI03, and SI03's products; those competitors included representatives of Bodybuilding.com and Gaspari; and the disparaging comments harmed Plaintiffs.

Plaintiffs now seek to amend their Complaint to clarify their theory of liability against Bodybuilding.com and Gaspari. Bodybuilding.com and Gaspari object to the proposed amendments as futile. In the alternative, Bodybuilding.com has moved to dismiss the proposed complaint and for summary judgment.

## ANALYSIS

1. **Plaintiffs' Motion to Amend**

    A. *Plaintiffs' Proposed Allegations Against Bodybuilding.com*

    On May 2, 2007, at 8:37 a.m., an individual using the pseudonym "INGENIUM" posted to the Bodybuilding.com forum the statement: "despite SI03's constant matrix pimping in CASEIN threads, matrix is not a micellar casein product." *Second Am. Compl.* ¶ 36, Dkt. 48. Plaintiffs claim that the statement misrepresents the nature, characteristics, and/or qualities of Plaintiff SI03's products, and that its publication on a

public forum damaged Plaintiffs. *Id.* "INGENIUM" is a forum moderator, and Plaintiffs allege that "INGENIUM" was acting as Bodybuilding.com representative when he or she posted the disparaging statement.

Despite SI03's assertion in the complaint, Bodybuilding.com insists that INGENIUM was not a moderator or its representative on May 2, 2007, and therefore it cannot be held liable for this statement. Plaintiffs respond that it does not matter whether INGENIUM was a Bodybuilding.com representative on May 2, 2007 because when the post is retrieved, INGENIUM now appears as a forum moderator – regardless of what his or her status might have been when the post was made. Plaintiffs now seek to amend their complaint to add the following allegations to clarify the factual basis for this theory:

- Bodybuilding.com encourage sits [*sic*] own employees, including but not limited to its customer service representatives, to actively post in Bodybuilding.com Forums whenever possible. *Proposed Third Am. Compl.* ¶ 21

- Upon information and belief, a user's status as a moderator on the Bodybuilding.com Forums is designated by the user's name appearing in bold font next to each of his or her posts. *Id.* ¶ 23.

- Upon information and belief, when a reading user (or guest) of the Bodybuilding.com Forums retrieves a post, the status of the posting user (as a moderator or non-moderator) is indicated as of the time the post is retrieved, regardless of the status of the posting user as of the time the post was originally made. *Id.* ¶ 24

- Upon information and belief, a reading user has no available way to ascertain the moderator status of a posting user as of the original time the post was made. *Id.* ¶ 25.

- Upon information and belief, one such moderator who uses the handle "INGENIUM" acts within the scope and course of his or her

representation for Bodybuilding.com in making and maintaining posts to the Bodybuilding.com Forums. *Id.* ¶ 20.

- Such [disparaging] statements by "INGENIUM" were either made while "INGENIUM" was a forum moderator for Bodybuilding.com, *or were made prior to "INGENIUM" becoming a moderator but "INGENIUM" did not delete such posts. Id.* ¶ 33 (emphasis added).

- The posts by "INGENIUM" were therefore available for review by the public with the appearance that "INGENIUM" was a representative of Bodybuilding.com in the capacity of Forum moderator. *Id.* ¶ 34

Plaintiffs seek to attach liability to Bodybuilding.com based on these allegations. Bodybuilding.com objects to the proposed amendments as futile. A district court does not err in denying leave to amend where the amendment would be futile or legally insufficient. *Gardner v. Martino*, 563 F.3d 981, 990 (9th Cir. 2009) (citation omitted). "However, a proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988).

Plaintiffs' proposed theory raises a novel question under Missouri law:[1] should an employer, after learning that an actionable statement posted on its website appears to have been made by its representative, have a duty to take reasonable measures to remove the actionable statement, or otherwise be found to have adopted its contents? The Court believes the answer to the question is yes.

Only a claim for unfair competition under the Lanham Act remains against

---

[1] This Court has already determined that Missouri rather than Idaho law applies.

Bodybuilding.com, but an analogy can be drawn from defamation law. In *Tacket v. General Motors Corp.*, 836 F.2d 1042, 1046 (7th Cir. 1987), for example, someone posted a sign on a wall inside a GM plant that defamed an employee. *Id.* at 1046-47. After the sign was removed three days later, the same defamatory statement was painted on the wall and remained there for seven months. *Id.* at 1047. The Seventh Circuit held that "[a] person is responsible for statements he makes or adopts" and that "[f]ailing to remove a libel from your building, after notice and opportunity to do so, is a form of adoption." *Id.* at 1046. The court explained, although management "had to be aware of the sign," a reasonable person could not infer that GM had adopted it because it was removed within three days. *Id.* at 1047. As to the painted message that remained for seven months, however, the court held that a jury could conclude that GM "intentionally and unreasonably fail[ed] to remove this sign and thereby published its contents." *Id.* at 1047.

*Tacket* could support the argument that Bodybuilding.com adopted the INGENIUM post by "intentionally and unreasonably" failing to remove it. Plaintiffs, however, must surmount two hurdles before stating a cognizable claim under an adoption theory.

First, Plaintiffs must alleged that Bodybuilding.com possessed the requisite knowledge for their proposed theory to survive. According to the Restatement, "the duty to remove an actionable statement arises only when the defendant knows that the defamatory matter is being exhibited on his land or chattels, and he is under no duty to

police them or to make inquiry as to whether such a use is being made." Restatement (Second) of Torts § 577 cmt. p. "He is required only to exercise reasonable care to abate the defamation, and he need not take steps that are unreasonable if the burden of the measures outweighs the harm to the plaintiff." *Id.* But here Plaintiffs fail to allege any facts suggesting Bodybuilding.com knew of the INGENIUM post. Nor, assuming Bodybuilding.com knew of the post, have Plaintiffs alleged any facts to suggest that Bodybuilding.com could easily have removed it.

Without these allegations, Plaintiffs' proposed theory fails. Plaintiffs only may save their claim by alleging sufficient facts to suggest Bodybuilding.com learned of the INGENIUM post and failed to take reasonable steps to remove it.

Even if Plaintiffs can meet this pleading challenge, they must also pierce the protections afforded to Bodybuilding.com by the Communications Decency Act of 1996. The Communications Decency Act shields Bodybuilding.com from liability for exercising the standard functions of a publisher, which involves deciding whether to withdraw information provided by "another information content provider." *Barnes v. Yahoo!, Inc.,* 570 F.3d 1096, 1100-1101 (9th Cir. 2009). In *Barnes*, the Ninth Circuit found that the Communications Decency Act protected Yahoo from liability for failing to remove indecent profiles of the plaintiff posted on Yahoo's website by the plaintiff's boyfriend under a negligent undertaking theory, because such a claim treated Yahoo as a

"publisher."[2] *Id.* On initial review, this holding suggests that Bodybuilding.com was merely exercising its publishing function when it failed to remove the INGENIUM post, and therefore is immune under the Communications Decency Act for this alleged failure.

But this case differs in one important respect from *Barnes*. In *Barnes*, there was no question that the information at issue was posted by "another information content provider." In contrast, here Plaintiffs have alleged that the forum post is available for review by the public with the appearance that it was made by a Bodybuilding.com representative acting in the capacity of a forum moderator. *Proposed Third Am. Compl.* ¶ 34, Dkt. 210-1. These facts, as alleged, strip Bodybuilding.com of immunity under the Communications Decency Act because they suggest that Bodybuilding was not merely exercising its publishing function by choosing not to remove the post of a third party, but that it was supporting and sanctioning its representative's statements.

The Court therefore holds that Plaintiffs may state a cognizable claim if they can allege in good faith that: (1) forum moderators are agents or representatives of Bodybuilding.com; (2) Bodybuilding.com had knowledge that "INGENIUM" posted disparaging comments about SI03's products; (3) Bodybuilding.com knew that the post, when viewed on the website, appeared to have been made by a forum moderator; and (4) Bodybuilding.com, after learning of the post, unreasonably failed to take steps to remove it. It is important to note, however, that Bodybuilding.com does not have a duty to police

---

[2] The Ninth Circuit ultimately found that the plaintiff could proceed on her claim under a promissory estoppel theory because a promissory estoppel claim did not treat Yahoo as a publisher, rather it simply treated Yahoo as another party to a contract.

**MEMORANDUM DECISION AND ORDER - 8**

past posts made by its current representatives; its only duty under these facts is to take effective measures to remove an actionable statement after learning that the statement has been posted on its website under circumstances which suggest to the public that the post was made by a Bodybuilding.com representative. *Cf., Tacket*, 836 F.2d at 1047.

### B. *Proposed Allegations Against Gaspari*

Plaintiffs also complain of three posts made by Gaspari's alleged agent, Daniel Pierce (aka "deserusan"), on Bodybuilding.com's forum. Pierce, using the pseudonym "deserusan" accused Plaintiff SI03 of manufacturing products that "elicited hepatitis like symptoms and caused liver failure in multiple subjects." *Second Am. Compl.* ¶ 83, Dkt. 48. He also stated that SI03 "was indeed responsible for killing a few people." *Id.* at ¶ 85. Plaintiffs claim that Defendant Gaspari is responsible for Pierce's posts.

Previously, Gaspari filed a motion for summary judgment, arguing that Mr. Pierce was not an agent, employee, or representative of Gaspari at the time the disparaging posts were made, and therefore Gaspari could not be held responsible for the posts. Dkt. 203. The Court denied the motion without prejudice, to allow Plaintiffs to conduct discovery. Now Plaintiffs seek to amend their complaint against Gaspari to add allegations nearly identical to those they seek to assert against Bodybuilding.com. Plaintiffs' proposed amendments against Gaspari include:

- Users of the Bodybuilding.com Forums may include a signature block that is included with the user's [sic] posts. *Proposed Third Am. Compl.* ¶ 26.

- Users of the Bodybuilding.com Forums who are representatives of

> manufacturers are required by the Forums [sic] rules to identify him- or herself as such in the user's signature block. *Id.* at ¶ 27.

- Upon information and belief, when a reading user (or guest) of the Bodybuilding.com Forums retrieves a post, the software dynamically appends the current signature block of the posting user as of the time the post is retrieved, regardless of the content of the signature block of the posting user as of the time the post was originally made. *Id.* at ¶ 28.

- Upon information and belief, a reading user has no available way to ascertain the status of the posting user as of the time the post was made. *Id.* at ¶ 29.

- Upon information and belief, a user of the Bodybuilding.com Forums always retains the ability to delete posts he or she previously made. *Id.* at ¶ 30.

- Such [disparaging] statements by "deserusan" were either made while "deserusan" was a Forum representative of Gaspari, or were made prior to "deserusan" becoming a Forum representative of Gaspari but "deserusan" did not delete such posts. *Id.* at ¶ 42.

- The posts by "deserusan" were therefore available for review by the public with the appearance that "deserusan" was a representative of Gaspari. *Id.* at ¶ 43.

- Gaspari was at fault for publishing such statements. *Id.* at ¶ 44.

Plaintiffs' allegations seem to suggest that Gaspari should be held liable because "deserusan" failed to delete the allegedly actionable posts when he became a Gaspari representative. The Court is not persuaded. An employer should not be held liable because its newly hired employee failed to delete past posts unknown to the employer. And an employer should not be required to inquire into the substance of all posts made by its employees before being hired. Such a rule would place an undue burden on employers.

However, as noted above, an employer, having knowledge that a current employee had previously made a disparaging or harmful statement, may be deemed to have adopted the statement if the employer fails to take effective measures to remove the post after learning of its existence and knowing that it will be perceived as the statement of a current employee. *Tacket*, 836 F.2d at 1047. *Cf., Blakey v. Continental Airlines, Inc.,* 751 A.2d 538, 552 (N.J. 2000)(finding that employer, having knowledge that co-employees were posting harassing messages about another co-employee on an electronic bulletin board used by the company's employees, had a duty to take effective measures to stop the co-employee harassment).

When an employer knows of actionable statements made by its employees, and those statements are available for review by the public with the appearance that the individual making the statement is a representative of the employer, the employer has essentially joined with the speaker in making the statement. The employer, by failing to take effective remedial measures, sends a message to the world that it supports the defamer and sanctions his or her conduct. In this scenario, the employer is not vicariously liable for the employee's initial publication of the statement, but is directly liable for publishing the statement through its unreasonable and intentional inaction.

Effective remedial measures are those reasonably calculated to end the continued publication of the disparaging statement. The reasonableness of the

**MEMORANDUM DECISION AND ORDER - 11**

employer's remedy will depend on its ability to stop the conduct.  *See, e.g., Blakey*, 751 A.2d at 550.

Here, Gaspari can be held liable if:  (1) Pierce is an employee or agent of Gaspari; (2) Gaspari knew that Pierce had previously posted disparaging comments about Plaintiffs' products; (3) Gaspari knew that Pierce's changing his profile on the Bodybuilding.com website to show his affiliation with Gaspari would affect past posts and suggest to the public that they were made while Pierce was an employee or agent of Gaspari; and (4) Gaspari, after learning that the change in profile would make it appear that the statements were made while Pierce was an employee, unreasonably failed to take steps to remove it.  If Plaintiffs can allege facts in good faith that would support such a claim, Plaintiffs will be permitted to amend their complaint.

Plaintiffs face a heavy burden, and the Court questions whether Plaintiffs can develop the facts necessary to support their claim in this particular case.  But this is a motion to amend, and Plaintiffs only must allege facts, consistent with their Rule 11 obligations, to state a cognizable claim.

### 2. Bodybuilding.com's Motion to Dismiss

The argument on this motion was intertwined with the futility argument on the motion to amend, to a great extent.  Thus, the ruling above applies equally here.

### 3. Bodybuilding.com's Motion for Summary Judgment.

Bodybuilding.com argues that summary judgment should be granted in its favor because Plaintiffs have so far failed to come forward with any evidence that INGENIUM was a moderator on May 2, 2007 when the post was made. At this juncture, the Court will deny Bodybuilding.com's summary judgment motion for several reasons.

First, the deadline for completing discovery has not passed and therefore, Bodybuilding.com's motion for summary judgment is premature.

Second, whether or not INGENIUM was a moderator on May 2, 2007 seems to be the type of evidence that would be in Bodybuilding.com's possession – not Plaintiffs. The Court agrees that Plaintiffs should take steps to acquire this information from Bodybuilding.com sooner rather than later, but the Court will not penalize Plaintiffs for not having the information before discovery has concluded.

Third, the Court has concluded that Plaintiffs may proceed on their theory that Bodybuilding.com is liable for INGENIUM's post even if he was not a forum moderator on May 2, 2007, assuming that Plaintiffs allege the requisite facts as identified in this decision; therefore, Bodybuilding.com's motion for summary judgment is moot.

4.  **Plaintiffs Are Entitled to Discover the Identity of INGENIUM**

Plaintiffs seek to discover the identity of Bodybuilding.com's forum moderators who have posted anonymously. Plaintiffs rely on briefing submitted to the Ninth Circuit in an apparently similar but wholly unrelated case. At oral

argument, Bodybuilding.com stated it was willing to reveal INGENIUM's identity to Plaintiffs, but that it continues to oppose Plaintiffs' request to disclose the identity of all Bodybuilding.com's forum moderators. Bodybuilding.com argues that the forum moderators' First Amendment right to post anonymously outweighs Plaintiffs' discovery interests.

The U.S. Supreme Court recognizes an individual's First Amendment right to speak anonymously. *In re Anonymous Online Speakers,* 611 F.3d 653, 657 (9th Cir. 2010) (citing *Talley v. California*, 362 U.S. 60, 64-65 (1960)). This right extends to internet speech: "Online speech stands on the same footing as other speech." *Id.* "As with other forms of expression, the ability to speak anonymously on the Internet promotes the robust exchange of ideas and allows individuals to express themselves freely without fear of economic or official retaliation ... [or] concern about social ostracism." *Id.* (citation and internal quotation marks omitted).

Limits exist, however, on the right to speak – whether anonymously or for attribution. *Id.* Political speech is afforded the highest protection, but commercial speech enjoys only a limited measure of protection, "commensurate with its subordinate position in the scale of First Amendment values." *Id.* (quoting *Bd. of Trustees of SUNY v. Fox*, 492 U.S. 469, 477 (1989)). Commercial speech enjoys no First Amendment protection if it is misleading. *Id.*

In the context of a discovery request, the Court must balance the First

Amendment rights of anonymous speakers with the right of civil litigants to protect their interests through the litigation discovery process. When determining which standard should apply for balancing the rights of anonymous speakers and the need for discovery, the Ninth Circuit has suggested that the character of speech is the "driving force" in deciding on a standard. *Id.* This means that the most exacting standard should not apply when mere commercial speech is at issue. *Id.*

Here, Plaintiffs argue that the speech at issue enjoy less First Amendment protection because it is commercial speech. The Court agrees that the INGENIUM post is commercial speech and only enjoys a limited measure of protection. INGENIUM's statement, "despite SI03's constant matrix pimping in CASEIN threads, matrix is not a micellar casein product," suggests that Plaintiffs have misrepresented the ingredients used in their products, which goes to the heart of their commercial practices. Because (1) the INGENIUM post is commercial speech and deserves less protection, and (2) Bodybuilding.com has expressed a willingness to disclose INGENIUM's identity, the Court directs Bodybuilding.com to disclose INGENIUM's identity to Plaintiffs.

The Court, however, is unconvinced that Plaintiffs should be allowed to discover the identify of the other moderators. In this lawsuit, Plaintiffs have not alleged that those moderators posted any actionable statements. Rather, at oral argument, Plaintiffs suggested they need to know the other moderators' identity because they may have some information regarding the alleged agency relationship

between moderators and Bodybuilding.com. Even if true, the Court does not find this is enough to justify violating the other moderators' First Amendment right to speak anonymously. Plaintiffs may explore the relationship between moderators and Bodybuilding.com through INGENIUM. Therefore, to the extent Plaintiffs have requested to discover the identity of all Bodybuilding.com moderators, the request is denied.

## ORDER

**IT IS ORDERED:**

1. Plaintiffs' Motion for Leave to File Third Amended Complaint (Dkt. 210) is GRANTED.

2. Defendant Bodybuilding.com's Motion to Dismiss (Dkt. 218) is DENIED.

3. Defendant Bodybuilding.com's Alternative Motion for Summary Judgment (Dkt. 218) is DENIED WITHOUT PREJUDICE.

4. Plaintiffs' request to discover the identity of forum posters (Dkt. 217) is GRANTED in part and DENIED in part. Plaintiffs may discover the identity of INGENIUM but no other forum posters.

DATED: **November 29, 2010**

B. LYNN WINMILL
Chief Judge U.S. District Court