UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DEREK W. CORNELIUS and SI03, INC, <br><br> Plaintiff, <br><br> v. <br><br> RYAN DELUCA d/b/a BODY BUILDING.COM; BYRNA MATTHEWS DELUCA d/b/a BODYBUILIDING.COM; BODYBUILDING.COM, LLC; MOLECULAR NUTRITION, LLC; M.A.N. SPORTS, INC.; DESIGNER SUPPLEMENTS, INC.; GASPARI NUTRITION, INC.; THERMOLIFE INTERNATIONAL, LLC; ADVANCED NUTRITION; UNIQUE NUTRITION, INC.; ENGINEERED SPORTS TECHNOLOGY, LLC; PALO ALTO LABS; SNS NUTRITION; BODY WELL NUTRITION, LLC; ISS RESEARCH; ERGOPHARM, INC.; BETANCOURT NUTRITION, INC.; and NIMBUS NUTRITION, LLC, <br><br> Defendants. | Case No. 1:10-CV-027-BLW <br><br> **MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court is Defendant Bodybuilding.com, LLC's Motion for

Reconsideration of November 29, 2010 Order (Dkt. 231). Bodybuilding.com asks the Court to reconsider its decision directing Bodybuilding.com to disclose the identity of the pseudonymous poster known as "INGENIUM." For the reasons set forth below, Bodybuilding.com has convinced the Court that it incorrectly ordered Bodybuilding.com to disclose INGENIUM's identity.

## LEGAL STANDARD

A motion to reconsider an interlocutory ruling requires an analysis of two important principles: (1) error must be corrected; and (2) judicial efficiency demands forward progress. The former principle has led courts to hold that a denial of a motion to dismiss or for summary judgment may be reconsidered at any time before final judgment. *Preaseau v. Prudential Insurance Co.*, 591 F.2d 74, 79-80 (9th Cir. 1979). While even an interlocutory decision becomes the "law of the case," it is not necessarily carved in stone. Justice Oliver Wendell Holmes concluded that the "law of the case" doctrine "merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power." *Messinger v. Anderson*, 225 U.S. 436, 444 (1912). "The only sensible thing for a trial court to do is to set itself right as soon as possible when convinced that the law of the case is erroneous. There is no need to await reversal." *In re Airport Car Rental Antitrust Litigation*, 521 F.Supp. 568, 572 (N.D.Cal. 1981)(Schwartzer, J.).

The need to be right, however, must be balanced with the need for forward progress. A court's opinions "are not intended as mere first drafts, subject to revision and

reconsideration at a litigant's pleasure." *Quaker Alloy Casting Co. v. Gulfco Indus., Inc.*, 123 F.R.D. 282, 288 (N.D.Ill.1988). "Courts have distilled various grounds for reconsideration of prior rulings into three major grounds for justifying reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence or an expanded factual record; and (3) need to correct a clear error or to prevent manifest injustice." *Louen v Twedt*, 2007 WL 915226 (E.D.Cal. March 26, 2007). If the motion to reconsider does not fall within one of these three categories, it must be denied.

## ANALYSIS

1. **Bodybuilding.com's Former Counsel Had No Authority to Commit Disclosing INGENIUM's Identity.**

During a hearing on November 10, 2010, Bodybuilding.com's former counsel stated:

> So in direct answer to your question, [Plaintiffs are] seeking the identity of a number of users and posters, not just INGENIUM. And that's where we draw the line. We have objected to many of the discovery requests and said, "We will give it to you about INGENIUM, but not anybody else." That's an issue for the Ninth Circuit.

*Hrg. Tr.* at 30:6-12, Dkt. 229. The Court understood from this statement that Bodybuilding.com would agree to disclose INGENIUM's identity to Plaintiffs.

Bodybuilding.com has since retained new counsel, and Bodybuilding.com now states that the comments by former counsel in the November 2010 hearing were wholly unauthorized. In addition, Bodybuilding.com argues that neither Bodybuilding.com had

authority to waive INGENIUM's First Amendment right to speak anonymously.

The Court will not compel Bodybuilding.com to disclose INGENIUM's identity based on its former counsel's equivocal statement. Former counsel did not outright state that Bodybuilding.com would disclose INGENIUM's identity. More importantly, as Bodybuilding.com points out, there is nothing in the record to demonstrate that *INGENIUM* knowingly and voluntarily waived his or her First Amendment rights. *Leonard v. Clark*, 12 F.3d 885, 889-90 (9th Cir. 1993) (noting that waiver of First Amendment rights must be knowing, voluntary and intelligent). Therefore, the Court agrees that former counsel's statements at oral argument were not a proper basis to order Bodybuilding to disclose INGENIUM's identity.

**2.     The Court Erred in Labeling INGENIUM's Post Commercial Speech.**

INGENIUM's May 2, 2007 post states that "despite SI03's constant matrix pimping in CASEIN threads, matrix is not a micellar casein product." *Memorandum Decision and Order* at 15, Dkt. 225. Relying heavily on language used in *In re Anonymous Online Speakers*, 611 F.3d 643 (9th Cir. 2010), the Court characterized the INGENIUM's post as commercial speech because it "suggests that Plaintiffs have misrepresented the ingredients used in their products, which goes to the heart of their commercial practices." *Id.* Since this Court labeled the post as commercial speech, the Ninth Circuit has withdrawn its original opinion in *In re Anonymous Online Speakers* and issued a new opinion declining to decide whether the anonymous online speech at issue was commercial speech. *In re Anonymous Online Speakers*, ___ F.3d ___, 2011 WL

61635, at *6 (9th Cir. Jan. 7, 2011).

Since the original opinion in *In re Anonymous Online Speakers* has been withdrawn, Bodybuilding.com now argues that the Court erred in labeling the INGENIUM post as commercial speech. The U.S. Supreme Court has not adopted an all-purpose test to distinguish commercial from noncommercial speech under the First Amendment, but it has said speech that does no more than propose a commercial transaction falls "within the core notion of commercial speech." *City of Cincinnati v. Discovery Network, Inc.,* 507 U.S. 410, 423 (U.S. 1993)(quoting *Board of Trustees of State University of N.Y. v. Fox*, 492 U.S. 469 (1989). In *Bolger v. Young Drug Corp.*, the Supreme Court specified three factors that may assist in identifying speech as commercial or noncommercial: (1) whether the communication is an advertisement, (2) whether the communication makes reference to a specific product, and (3) whether the speaker has an economic motivation for the communication. 463 U.S. 60, 67 (1983).

In its prior decision holding that the INGENIUM post is commercial speech, the Court did not analyze the *Bolger* factors; thus, the Court agrees with Bodybuilding.com that it may have been too hasty in labeling the INGENIUM post commercial speech. The application of the *Bolger* factors makes clear that the speech here does not sort cleanly into either category: commercial or noncommercial. While the INGENIUM post refers to a specific product, it is not clear whether INGENIUM had an economic motivation for the communication. Another layer of complexity is added to this inquiry when one considers that Plaintiffs have alleged, in essence, that Bodybuilding.com became the "speaker"

when it supposedly failed to take reasonable steps to remove the post. Presumably, it would be necessary to explore what motivation Bodybuilding allegedly had in failing to remove the post before deciding whether the post is commercial or noncommercial speech.

Without delving into a detailed analysis of whether the INGENIUM post is commercial or noncommercial speech, the Court finds without a doubt that it cannot be labeled "core" commercial speech because it does not merely propose a commercial transaction. To the extent the Court suggested otherwise, it erred. This does not mean, however, that the Court necessarily erred in concluding that Bodybuilding.com must disclose INGENIUM's identity. Instead, the Court must reevaluate whether INGENIUM's identity should be disclosed, keeping in mind that the speech at issue is not core commercial speech.

**3.      INGENIUM's First Amendment Right to Post Anonymously Outweigh Plaintiffs' Need for Relevant Discovery.**

It is clear that INGENIUM has a right to post anonymously on the Internet, but this right is not absolute: the Court must balance INGENIUM's right to speak anonymously against Plaintiffs' need for relevant discovery to redress any alleged wrongs perpetrated by Bodybuilding.com. *See, e.g., In re Anonymous Online Speakers,* — F.3d —, 2011 WL 61635, *6 (9th Cir. 2011). The degree of scrutiny the Court applies in balancing these competing interests varies depending on the circumstances and the type of speech at issue. *Id.* at *3.

The First Amendment affords the highest protection to "core" political or religious speech, *Meyer v. Grant,* 486 U.S. 414, 414 (1988). Governmental restrictions on such speech are entitled to "exacting scrutiny," and are upheld only where they are "narrowly tailored to serve an overriding state interest." *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995). In contrast, commercial speech only enjoys "a limited measure of protection, commensurate with its subordinate position in the scale of First Amendment values." *Anonymous Online Speakers*, 2011 WL 61635 at *2 (quoting *Bd. of Trustees of SUNY v. Fox*, 492 U.S. 469, 477 (1989)). "And some speech, such as fighting words and obscenity, is not protected by the First Amendment at all." *Id.* (citing *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571-72 (1942)). However, even non-core speech is entitled to First Amendment protection. *McIntyre*, 514 U.S. at 346 (internal quotation marks and citation omitted).

As previously noted, the INGENIUM post is not core commercial speech. But it is equally true that it cannot be classified as strictly "core" political or religious speech, "for which First Amendment protection is at its zenith." *Meyer v. Grant,* 486 U.S. 414, 414 (U.S. 1988). The speech at issue here is therefore not entitled to "exacting scrutiny." Instead, the Court finds that the INGENIUM post is deserving of more protection than mere commercial speech but less than speech that lies at the heart of First Amendment values, such as religious or political speech.

Against this backdrop of First Amendment protection, the Court must decide whether Plaintiffs are entitled to discover INGENIUM's identity. The Ninth Circuit has

not yet adopted a magic formula for balancing the need for discovery and the right to anonymous speech. In *Perry v. Schwarzenegger*, in which the plaintiffs sought disclosure of internal campaign communications, the Ninth Circuit adopted a "heightened relevance standard," which required plaintiffs to demonstrate an interest in obtaining the disclosure sufficient to justify the deterrent effect on the free exercise of the First Amendment right of association. 591 F.3d 1147, 1164 (9th Cir. 2010). It said that the liberal standard under Federal Rule of Civil Procedure 25 "fail[ed] to give sufficient weight to the First Amendment interests at stake." *Id. Perry* is not directly on point because it did not deal with anonymous Internet speech, but it is instructive.

In addition, the Court finds instructive other approaches district courts have taken. Courts have considered a number of factors in balancing a party's need for relevant discovery against an individual's First Amendment rights. In *Sony Music Entertainment Inc. v. Does 1-40*, 326 F.Supp.2d 556 (S.D.N.Y. 2004), the Southern District of New York considered the following five factors when deciding whether discovery of the Doe defendants' identities should be allowed: (1) plaintiff's ability to establish a prima facie claim, (2) the specificity of plaintiff's discovery request, (3) the availability of alternative means to obtain the subpoenaed information, (4) the central need for discovery to advance plaintiff's claim, and (5) defendants' expectation of privacy. 326 F.Supp.2d 556, 564-67. Other courts have considered similar factors. *See, e.g., Highfields Capital Management, L.P. v. Doe*, 385 F.Supp.2d 969 (N.D.Cal. 2005); *2TheMart.com*, 140 F.Supp.2d at 1091-92 *Mobilisa, Inc. v. Doe,* 170 P.3d 712, 721 (Ariz.App. Div. 2007); *Dendrite Int'l,*

*Inc. v. John Doe No. 3*, 342 N.J.Super. 134, 775 A.2d 756, 760-61 (App.Div. 2001).

In this case, the Court believes that it can dispense of Plaintiffs' request to discover INGENIUM's identity by looking solely at whether a central need exists for the requested information to advance the plaintiff's claims. INGENIUM is not a party to this lawsuit, and Plaintiff has no need to ascertain INGENIUM's identity to serve process. Thus, Plaintiffs must clear an extra-high hurdle to justify the disclosure of a non-party, anonymous poster: "non-party disclosure is only appropriate in the *exceptional* case where the compelling need for the discovery sought outweighs the First Amendment rights of the anonymous speaker." *Doe v. 2TheMart.com Inc.,* 140 F.Supp.2d 1088, 1095 (W.D.Wash. 2001)(emphasis added). The Court finds that Plaintiffs have not cleared that high hurdle here.

At oral argument, counsel for Plaintiffs explained that even if the Court did not grant their motion to amend the complaint, they would need to depose INGENIUM to ask: "When did he become a moderator? What was his – what was his relationship like at the time he made the post? When did it change?" *Hrg Tr.* at 18:1-9, Dkt. 229. There is no doubt this information is relevant. For Plaintiffs' claim against Bodybuilding.com to survive, they must come forward with proof that "forum moderators are agents and representatives of Bodybulding.com." *Memorandum Decision and Order* at 8, Dkt. 225.

But have Plaintiffs shown a compelling need for this information? Could Plaintiffs acquire this information through alternative means without knowing INGENIUM's identity? Have Plaintiffs have come forward with any credible evidence to suggest that

INGENIUM's relationship with Bodybuilding.com is not what Bodybuilding.com has said it is?  Or, are Plaintiffs simply setting out on a fishing expedition?

The Court believes the answer to the second question – whether there is an alternative means of acquiring the information sought – answers the first – whether Plaintiffs have shown a compelling need to discover INGENIUM's identity.  And the Court finds that Plaintiffs have failed to show that the information regarding INGENIUM's relationship with Bodybuilding.com  is not available through other sources.  Bodybuilding.com's personnel could speak – and have spoken – to this issue.  Bodybuilding.com has submitted the declaration of Jeremy Deluca, and he testified that INGENIUM became a moderator on April 16, 2008.  *Deluca Decl.*  ¶ 7, Dkt.  88-1.  He also testified that moderators of Bodybuilding.com's Internet forums are unpaid volunteers who aid in directing conversations on a forum.  *Id.* a¶ 11.  According to Mr. Deluca, Bodybuilding does not select the moderators of its forums, but rather they are selected by voting in which Bodybuilding.com does not participate.  *Id.* ¶¶ 10, 12.  Nor does Bodybuilding.com nominate, train, or instruct its forum moderators.  *Id.*  ¶ 12.

The Court understands that in the normal case where a witness's First Amendment rights were not implicated, a party would not have to rely solely on the word of a key representative of the opposing party.  Here, however, Plaintiffs have to come forward with something more to justify the deterrent effect on free speech.  Plaintiffs could easily have deposed Mr. Deluca to determine the veracity of these statements, or to inquire whether INGENIUM's relationship with Bodybuilding.com differed from the typical

forum moderator.  Plaintiffs also could have asked Mr. Deluca if he knew of other Bodybuilding.com representatives that could shed light on the case.

It is the Court's understanding, however, that Plaintiffs have taken no deposition of Bodybuilding.com personnel, including Mr. Deluca, to attempt to develop evidence to rebut or impeach Mr. Deluca's testimony.  *Bodybuilding.com's Summ. J. Br.* at 5, Dkt. 242-2.  All they have is Plaintiff Derek Cornelius's testimony that he believed forum moderators acted as agents of Bodybuilding.com based on his visits to the Bodybuilding.com website.  If Plaintiffs had come forward with any evidence to suggest that INGENIUM's relationship with Bodybuilding.com differed from Mr. Deluca's description, the Court might have found that a compelling need existed to allow Plaintiffs to depose INGENIUM as a fact witness.  But, instead, the record shows that Plaintiffs have not even attempted to depose those they could.

Other factors also counsel in favor of a finding that Plaintiffs are not entitled to learn INGENIUM's identity.  First, the Court finds INGENIUM has an expectation of privacy based on Bodybuilding.com's Terms of Service and Privacy Policy.  *See, e.g., McVicker v. King*, 266 F.R.D. 92, 96 (W.D. Pa. 2010) ("terms of service . . . create an expectation of privacy for any registered user").  Bodybuilding.com's terms of service state that no poster may make any post that would infringe on another poster's right to privacy.  *Terms of Service*, Section 7(f), Dkt. 219-1.  Also, Bodybuilding.com's Privacy Policy states that protecting users' privacy is a top priority, and Bodybuilding.com has taken reasonable measures to protect users' private information.  *Bodybuilding.com's*

*Privacy Policy*, Dkt. 219-2.

The Terms of Service and Privacy Policy reflect that Bodybuilding.com prioritizes its users' privacy. Thus, the Court finds that INGENIUM has an expectation of privacy based on these policies. Moreover, the posting of Internet Protocol addresses of users by Bodybuilding.com moderators without the users' consent did not strip INGENIUM of his or her expectation of privacy. *See, e.g., Doe 1 v. AOL LLC*, 719 F. Supp. 2d 1102 (N.D. Cal. 2010) (disclosure of information related to 685,000 users in contravention of stated privacy policy did not preclude other members from seeking injunctive relief against future disclosures).

The Court also notes that, at this juncture, Plaintiffs claims against Bodybuilding.com appear tenuous. While Plaintiffs have survived a motion to dismiss and have been allowed to amend their Complaint in the face of futility arguments, Plaintiffs have thus far come forward with no evidence to establish that INGENIUM was an agent or representative of Bodybuilding.com. As noted above, Plaintiffs did not have to wait to discovery INGENIUM's identity to come up with *some* evidence to support their allegation that he or she was an agent or representative.

In sum, the Court concludes that Bodybuilding.com's motion for reconsideration should be granted and Bodybuilding.com should not be compelled to disclose INGENIUM's identity. The words of another district court considering a similar issue seem particularly appropriate here:

> Distilled to its essence, Plaintiff's attempt to obtain the personally

identifiable information of the anonymous internet speakers is a fishing expedition based on speculation that the anonymous bloggers will be able to impeach the deposition testimony of the Individual Defendants. While disclosure of the anonymous speakers' identities may certainly be helpful to Plaintiff, the Court does not believe that this is the exceptional case where the compelling need for the discovery sought outweighs the First Amendment rights of the anonymous speakers.

*McVicker*, 266 F.R.D. at 97.

Similarly, in this case, the Court finds that Plaintiffs' attempt to discover INGENIUM's identity is a fishing expedition based on speculation that INGENIUM was or is an agent or representative of Bodybuilding.com. Even though the Court finds that Plaintiffs seek this information in good faith and the information is material to Plaintiff's core claims, the Court also finds that this same information is available through different channels that would not encroach on INGENIUM's First Amendment right to speak anonymously. Thus, Plaintiffs' need to discover this information does not outweigh INGENIUM's First Amendment rights.

## ORDER

**IT IS ORDERED that** Defendant Bodybuilding.com, LLC's Motion for Reconsideration of November 29, 2010 Order (Dkt. 231) is GRANTED.

DATED: **March 15, 2011**

Honorable B. Lynn Winmill
Chief U. S. District Judge