UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| Derek W. Cornelius and SI03, Inc., a Delaware corporation,<br><br>          Plaintiff,<br><br>     v.<br><br>Bodybuilding.com, LLC, a Delaware limited liability company, Gaspari Nutrition, Inc., a New Jersey corporation, Thermolife International, LLC, an Arizona limited liability company, Nutramedicas, Inc. d/b/a Palo Alto Laboratories, Inc.,<br><br>          Defendants. | Case No. 1:10-cv-027-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

The Court has before it motions for summary judgment filed by Defendant

Gaspari Nutrition, Inc.'s (Dkt. 243) and Bodybuilding.com, Inc. (Dkt.  242).   Plaintiffs

Derek W. Cornelius and SI03, Inc. claim that Defendants Gaspari Nutrition, Inc. and

Bodybuilding.com, LLC are responsible for allegedly disparaging posting made on the

website operated by Bodybuilding.com.  For the reasons set forth below, the Court will

grant both Gaspari and Bodybuilding.com's motions.

## BACKGROUND

Plaintiff Derek Cornelius was the founder, president, and CEO of Syntrax Innovations, Inc. *Cornelius Aff.* ¶ 1, Dkt. 256-3. Syntrax Innovations, formed in 1998, manufactured and marketed a line of sports nutrition and dietary supplements. *Id.* at ¶ 2. In January 2004, Syntrax Innovations sold all of its assets, including the SYNTRAX brand name, to Plaintiff SI03, Inc. and ceased operations. *Id.* at ¶ 12. SI03 continues to sell its products under the SYNTRAX brand name. *Fanger Decl.* ¶ 2, Dkt. 256-2. Cornelius has no direct nor indirect ownership in SI03, but he remains an independent technical consultant specializing in research and development for the entire SYNTRAX line. *Cornelius Aff.* at ¶ 13.

Defendant Gaspari Nutrition, Inc. manufactures and markets its own line of bodybuilding supplements. *Gaspari Aff.* ¶ 11, 243-4.

Both SI03 and Gaspari sell their products on a website operated by Bodybuilding.com, which provides a marketplace for the sale of bodybuilding and nutritional supplements. *Deluca Decl.* ¶ 4, Dkt. 88. The site also features an online forum, where members of the public may post comments and discuss available products. *Id*. Bodybuilding.com enlists forum moderators who aid in directing conversations on the forum. *Id*. at ¶ 11. The moderators may, among other things, edit and delete posts, move threads**,** and ban forum users for violations of the forum's terms and conditions. *Bodybuilding.com FAQ* at 1, Dkt. 259-3. Moderators self-select by nominating themselves on a designated topic board in the online forum. Other forum members then vote on the nomination. If confirmed, the nominated forum member is given the

MEMORANDUM DECISION AND ORDER - 2

moderator title after Bodybuilding.com approves the application.  *Barnet Dep*. 59:15-25,

Dkt. 259-2.  Bodybuilding.com does not pay the moderators a salary, and they are not

considered employees.  *Id.* at ¶ 11.  But moderators receive a discount on all products

they purchase from Bodybuilding.com.  *Barnet Dep*. 27:12-28:12, Dkt. 259-2.  They are

also offered a free trip to the Boise Fit Expo.  *Id.*

On December 31, 2006, a man named Daniel Pierce, using the handle "deserusan,"

posted a comment on a bodybuilding.com forum.  He said:

> Agreed . . . but here is a primer on Syntrax just for sh*ts and
> giggles: 1.They put out a product which elicited hepatitis like
> symptoms and caused liver failure in multiple subjects and has
> been documented in peer reviewed journals. 2. They are notorious
> for patent infringement which includes lengthy legal battles with
> SANN and Molecular Nutrition. 3. Nectar has filed label claims
> with regards to carb content which was usually 3-4 times higher
> than actually stated. 4. Their 'founder' also has 'connections' with
> Zima Nutrition and Creative Compounds which they do not care to
> admit due to him being one of the industry's biggest scumbags
> EVER. He was even dumb enough to have his name as the owner
> of the Zima domain name which has since been changed. 5. It has
> been proven they flooded this forum with multiple shills all using
> the same proxy server to pimp various products like Swolen.

*Third Am. Compl.* at ¶ 41.

A couple of weeks later, on January 11, 2007, "deserusan" posted a second

comment:

> No one is jealous of Syntrax, your reputation in the industry, your
> pathetic sales, how you lie about your affiliations with ZIMA and
> Creative Compounds, the fact that you guys have put numerous
> people in the hospital with dangerous products, you numerous IP
> infringements resulting in numerous lawsuits and why ZIMA was
> started in the first place, etc., etc., etc. . . .

*Id.* at ¶ 42.

**MEMORANDUM DECISION AND ORDER - 3**

And on January 16, 2007, "deserusan" posted a third statement:

> and as far as I'm concerned the only thing worthwhile posted there
> was that Syntrax was indeed responsible for killing a few people.
> Congrats on being the first company to be directly attributed to the
> death of a customer .

*Id.* at ¶ 43.

In March 2007, a few months after the last post was made, Gaspari hired Daniel
Pierce (aka deserusan) as a part-time customer service representative.  *Gaspari Aff.* ¶ 8.
After being hired by Gaspari, Pierce updated his signature on bodybuilding.com to reflect
his new status as a Gaspari employee.  *Pierce Aff.* ¶ 11.  The signatures on the
bodybuilding.com forums are "dynamic" – meaning when a forum user changes his or
her signature, the updated signature applies to all posts, future and past.  Therefore, when
Pierce updated his signature to state that he was a "Gaspari Rep," it changed posts he
made in the past – making it appear that he was a Gaspari representative when the posts
were made even though he was not.

On May 2, 2007, at 8:37 a.m., another forum member, under the pseudonym
INGENIUM, posted to the Bodybuilding.com forum the statement: "i couldn't help but
L O L when i read this.  despite SI03's constant matrix pimping in CASEIN threads,
matrix is not a micellar casein product." *Third Am. Compl.* ¶ 31, Dkt. 227.
INGENIUM's post was made in apparent response to a post championing SI03's Syntrax
Matrix 5.0 product, which was written by Jeff Fanger, an SI03 officer who posted to the
forum as "SI03 Board Rep." *Cornelius Dep.* 22:9-24, Dkt. 218-1.  No one ever replied to
INGENIUM's post.  *Paul Decl.* ¶ 3, 242-4 & Ex. B, Dkt. 242-5.

INGENIUM was not a forum moderator when he made the post in May 2, 2007. *Deluca Decl.* ¶ 7, Dkt. 88-1.  He, however, did become a moderator on April 16, 2008. *Id.* at ¶ 8.  Becoming a moderator made his signature appear in bold for all posts – whenever made.  But when INGENIUM's status as a moderator ceased last year, *Barnet Dep.*, 57:1-14, Dkt. 259, his signature no longer appeared in boldfaced type.

On October 20, 2008, Plaintiffs filed this action in Missouri state court, alleging violations of the Lanham Act, 15 U.S.C. § 1125(a) and various state law tort claims, including tortious interference with a business expectancy, injurious falsehood, and defamation.  Plaintiffs named more than fifteen defendants in the suit.  The case was removed to federal court in Missouri in December 2008, and transferred to this Court in June 2009.  Since the filing of the original complaint, the number of answering defendants has been winnowed to Bodybuilding.com and Gaspari.[1]  All claims against Gaspari remain.  Only the Lanham Act claim remains against Bodybuilding.com.

Both Gaspari and Bodybuilding.com now seek summary judgment.

## LEGAL STANDARD

One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from

---

[1] Thermolife International, LLC, Nutramedics, Inc. d/b/a Palo Alto Laboratories, Inc., and Betancourt Nutrition were all named as defendants in Plaintiffs' Third Amended Complaint (Dkt. 227), but have never filed an answer to any of Plaintiffs' three complaints filed in this case.

going to trial with the attendant unwarranted consumption of public and private

resources." *Id*. at 327.  "[T]he mere existence of some alleged factual dispute between

the parties will not defeat an otherwise properly supported motion for summary

judgment; the requirement is that there be no genuine issue of material fact." *Anderson v.*

*Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986).

The evidence must be viewed in the light most favorable to the non-moving party,

and the Court must not make credibility findings. *Id.* at 255.  Direct testimony of the

non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d

1152, 1159 (9th Cir. 1999).  On the other hand, the Court is not required to adopt

unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d

1205, 1208 (9th Cir. 1988).

The Court must be "guided by the substantive evidentiary standards that apply to

the case." *Liberty Lobby*, 477 U.S. at 255.  If a claim requires clear and convincing

evidence, the issue on summary judgment is whether a reasonable jury could conclude

that clear and convincing evidence supports the claim. *Id*.

The moving party bears the initial burden of demonstrating the absence of a

genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir.

2001)(en banc).  To carry this burden, the moving party need not introduce any

affirmative evidence (such as affidavits or deposition excerpts) but may simply point out

the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman*

*Cato Johnson,* 212 F.3d 528, 532 (9th Cir.2000).

MEMORANDUM DECISION AND ORDER - 6

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Id.* at 256-57. The non-moving party must go beyond the pleadings and show "by her affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *Celotex,* 477 U.S. at 324.

However, the Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.,* 237 F.3d 1026, 1029 (9th Cir.2001) (quoting *Forsberg v. Pac. Northwest Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988)). Instead, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts." *Southern California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003). Statements in a brief, unsupported by the record, cannot be used to create an issue of fact. *Barnes v. Independent Auto. Dealers*, 64 F.3d 1389, 1396 n.3 (9th Cir. 1995).

## ANALYSIS

1.      **Gaspari's Motion for Summary Judgment**

Plaintiffs' claims against Gaspari are based on the three posts made by Daniel Pierce on December 31, 2006, January 11, 2007, and January 16, 2007. In the original complaint, Plaintiffs alleged that Pierce was acting in his capacity as a Gaspari representative when he made the posts. Now Plaintiffs seem to concede – or, at the very least, do nothing to refute – that an agency relationship did not exist between Pierce and Gaspari at the time Pierce made the posts. Instead, Plaintiffs argue that Gaspari is liable for the posts because Gaspari failed to take reasonable steps to remove the posts after

Pierce changed his signature block to state that he was a "Gaspari rep."  The posts,

Plaintiffs assert, "were therefore available for review by the public with the appearance

that 'deserusan' was a representative of Gaspari."  *Third Am. Compl.* ¶ 45, Dkt. 227.

In a prior decision the Court found that Plaintiffs could pursue this theory if

Plaintiffs could prove that Gaspari intentionally and unreasonably failed to remove the

allegedly defamatory posts after notice and opportunity to do so. *Memorandum Decision

and Order* at 12, Dkt. 225 (citing *Tacket v. General Motors Corp.*, 836 F.2d 1042, 1046

(7th Cir. 1987).  As explained by the Seventh Circuit in *Tacket*, "[a] person is responsible

for statements he makes or adopts, so the question is whether a reader may infer adoption

from the presence of a statement." *Tacket*, 836 F.2d at 1046.  For example, "[t]hat

inference may be unreasonable for a bathroom wall or the interior of a subway car in

New York City but appropriate for the interior walls of a manufacturing plant, over

which supervisory personnel exercise greater supervision and control."  *Id.*  In the case of

the manufacturing plant, "[t]he costs of vigilance are small (most will be incurred

anyway), and the benefits potentially large (because employees may attribute the

statements to their employer more readily than patrons attribute graffiti to barkeeps)."  *Id.*

Here, by contrast, a reasonable jury could not infer that Gaspari "intentionally and

unreasonably" kept the posts in view of the public.  Pierce was not an employee when he

made the posts.  Gaspari knew nothing of the posts when it hired Pierce.  Likewise,

Gaspari did not know that Pierce changed his signature block on the bodybuilding.com

forums, and it did not know that the change in the signature block would affect past posts

until after the lawsuit was filed.  *Gaspari Aff.* ¶ 11, 243-4.  Moreover, Gaspari had no

MEMORANDUM DECISION AND ORDER - 8

power to remove the posts.  Gaspari exercises no control over the bodybuilding.com

forums.  At most, Gaspari could have directed Pierce to delete the posts when it learned

of them, but Pierce did not have the power to edit or delete the posts more than 48 hours

after they were made.  *Id.* at ¶ 12.  Thus, both notice of the posts and the opportunity to

remove them were lacking.

Without evidence that Gaspari knew, or had a reason to know, of the posts before

this lawsuit was filed, it would be unreasonable to impose "first impression" liability on

Gaspari for posts buried in an online forum, which were made by a forum user who was

not an employee at the time, and which were posted on a website that Gaspari did not

own or control.  Under these circumstances, the costs of constant vigilance are too high

(forcing employers to grill employees about online posts made in the past) and the

benefits small in comparison (forum users are not likely to attribute to an employer an

employee's clearly personal opinions stated outside the workplace in an online thread).

## 2.    Bodybuilding.com's Motion for Summary Judgment

Plaintiff SI03's[2] last remaining claim against Bodybuilding.com is for unfair

competition under the Lanham Act.  This claim is based on the post made by

INGENIUM on the bodybuilding.com forum on May 2, 2007.  Seeking to attribute the

post to Bodybuilding.com, SI03 alleges that INGENIUM, as a forum moderator, acted

"within the scope and course of his or her representation for Bodybuilding.com in making

---

[2] Plaintiff Derek Cornelius concedes that he has no personal claim against Bodybuilding.com.  Therefore, only Plaintiff SI03 is making a claim against Bodybuilding.com.  To the extent, Cornelius has made a claim against Bodybuilding.com, summary judgment will be granted in favor of Bodybuilding.com on that claim.

and maintaining posts to the bodybuilding.com forums." *Third Am. Compl.* ¶ 20, Dkt. 227.  Similar to its argument against Gaspari, SI03 contends that Bodybuilding.com endorsed or "adopted" INGENIUM's statement – and therefore became responsible for it – when it failed to remove the post after INGENIUM became a moderator.

The survival of this last claim against Bodybuilding.com depends on whether INGENIUM, as a forum moderator, had actual or apparent authority to speak on behalf of Bodybuilding.com regarding the attributes of particular products.  As a principal, Bodybuilding.com "is responsible for the acts and agreements of its agents which are within their actual or apparently authority."  *Nichols v. Prudential Ins. Co. of America,* 851 S.W.2d 657, 661 (Mo.App. E.D. 1993).  "Authority is the power of the agent to affect the legal relations of the principal by acts done in accordance with the principal's manifestations of consent to him."  *Id.* (quoting Restatement (Second) of Agency § 7 (1957)).  Actual authority may be expressed or implied.  *Id.*  Express authority is created by the principal explicitly telling the agent what to do while implied authority consists of those powers incidental and necessary to carry out the express authority.  *Id.*

SI03 argues that Bodybuilding.com gives its moderators actual and express authority to delete posts of forum users and to ban forum users for violations of the terms and conditions of forum use, and thus moderators are agents of Bodybuilding.com. *Barnet Dep.* at 25:21-26:22; 56:10-25, Dkt. 259-2.  This argument, according to Bodybuilding.com, misses the mark.  Moderators are agents for the limited purposes of moderating discussions, but this does not make them all-purposes agents.  *See, e.g.,*

*Business Bank of Saint Louis v. Old Republic Nat. Title Ins. Co.*, 322 S.W.3d 548, 552 (Mo.App. E.D. 2010).

The Court agrees.  SI03 presents no evidence suggesting that Bodybuilding.com expressly authorized INGENIUM, as a forum moderator, to speak on Bodybuilding.com's behalf about products sold on bodybuilding.com.  Nor has SI03 produced any evidence from which a reasonable juror could conclude that INGENIUM's stating his or her opinions about a specific line of nutritional supplements was necessary and incidental to carrying out his or her express authority to moderate forum discussions.

SI03 also fails to convince the Court that INGENIUM had apparent authority to speak on behalf of Bodybuilding.com about the virtues of a particular product. "Apparent authority exists where a principal's manifestations to a third party have created a reasonable belief in the third party that an agent is acting for the principal, or where the principal is fully aware that another is acting as his agent but does nothing to correct the misconception." *The Bar Plan v. Cooper*, 290 S.W.3d 788, 792 (Mo.App. E.D. 2009). In determining the existence and scope of apparent agency, the focus is on a third person. *The Bar Plan*, 290 S.W.3d at 792 (quoting *Barton v. Snellson*, 735 S.W.2d 160, 162 (Mo.App. E.D.1987)).  Again, there is no evidence to suggest that Bodybuilding.com has done anything to give the public the impression that forum moderators have the authority to speak on behalf of Bodybuilding.com about the various products offered for sale on its website.

At most, Bodybuilding.com represented to the public that moderators had the authority to oversee and edit forum discussions.  This does not translate into a

representation that forum moderators represent Bodybuilding.com when stating personal opinions on a forum.  Rather, a close link between an agent's tortious conduct and the agent's apparent authority must exist in order for the principal to be liable.  Restatement (Third) of Agency § 7.08, cmt. a (2006).  Here, this close link does not exist.

Alternatively, SI03's Lanham Act claim against Bodybuilding.com fails because SI03 cannot prove it suffered any damages.  Indeed, SI03 does not even have evidence that anyone saw the post made by INGENIUM.  The INGENIUM post was the last in a thread; no one responded to the post.  *Paul Decl.* ¶ 2, Dkt. 242-4.  Moreover, INGENIUM did not become a moderator until a year and a half after the post was made.  And there is even less evidence to suggest that a forum member went back and retrieved the post a year and a half later and saw INGENIUM's name in boldface type indicating his moderator status.  Without some proof that someone saw the post and attributed it to Bodybuilding.com, there is no injury that can be readily traced back to Bodybuilding.com.

SI03 retorts that it need not present proof of injury when seeking equitable relief.  This argument falls flat, however, because SI03 has no basis to seek equitable relief.  INGENIUM ended his moderator status last year, and his name no longer appears in bold when the post is retrieved.  Thus, there is nothing to enjoin because the allegedly wrongful conduct has ceased.  And SI03 has not presented any evidence that would justify an award of some other form of equitable relief, such as payment for corrective advertising, as there is no evidence that another consumer even saw the post.

In another attempt to save its damages claim, SI03 argues when a Lanham Act claim "involves false advertising rather than 'palming off,' courts have been more willing

to allow monetary damages even without a showing of actual consumer confusion." *Pl.'s Resp. Br.* at 7, Dkt. 259. To support this argument, SI03 relies on *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134 (9th Cir. 1997). The court in *Southland* held, in the context of false comparative advertising claims, the publication of a deliberately false comparison gives rise to a presumption of consumer deception. *Id.* at 1146. But, as Bodybuilding.com correctly notes, this argument is flawed because (1) there is no evidence that Bodybuilding.com deliberately published false information about a SI03 product, *and* (2) the INGENIUM post is not comparative advertising – it does not compare an SI03 product to any other product.

Also, in *Southland*, the plaintiff had presented a market analysis, which the court found provided "adequate evidence for a reasonable jury to conclude that Plaintiffs suffered actual injury as a result of Defendants' advertisements." *Id.* Here, by contrast, there is *no* evidence of actual injury: no market analysis, no expert testimony, no consumer testimony regarding actual deception, nor any other injury evidence. Without any evidence of damages, SI03's Lanham Act claim against Bodybuilding.com fails.

## ORDER

IT IS THEREFORE ORDERED that:

1. Defendant Gaspari Nutrition, Inc.'s Motion for Summary Judgment (Dkt. 243) is GRANTED.

2. Defendant Bodybuilding.com, Inc.'s Motion for Summary Judgment (Dkt. 242) is GRANTED.

3.  Defendant Gaspari Nutrition, Inc's Motion to Strike Plaintiffs' Declarations (Dkt. 258) is denied as MOOT.

4.  SI03's Combined Motion to Reopen Deposition and Compel Responses (Dkt. 260) is denied as MOOT.

DATED: June 1, 2011

B. Lynn Winmill
Chief Judge
United States District Court